# Hughes *v.* Central Accident Insurance Company, Appellant.

*Insurance—Accident insurance—Immediate notice—Question for jury—Reasonable time.*

In an action upon a policy of accident insurance requiring immediate notice to be given of an accident, the word "immediate" is to be construed as meaning a reasonable time after the accident under the facts and circumstances of the particular case.

The court is justified in ruling as a matter of law that notice has not been given in time only where the admitted facts and circumstances disclose nothing by way of extenuation or excuse.

Where a passenger on a railroad train, struck by a cinder in the eye, experiences no immediate ill results, but five weeks afterwards is informed by a physician that a cataract is forming on his eye as a result of the accident, and notice is thereupon immediately given to an accident insurance company in which the passenger was insured, the question whether the notice was given within a reasonable time under the circumstances, is a question for the jury.

Where a person insured in an accident insurance company gives a notice, sufficient in form, of an accident to himself, and the company denies all liability on the sole ground that the notice was too late, but subsequently sends the insured a blank form with a letter in which, while denying liability, and not admitting any waiver, it requested the insured to state the facts on the form so that if he had any equity it might be ascertained, the blank filled out by the insured, in form a sufficient proof of loss, is for the consideration of the jury as one of the elements in the case.

While courts will extend all reasonable protection to insurers, by allowing them to hedge themselves about by conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of construction, that as the language of the conditions is theirs, and it is therefore in their power to provide for every proper case, it is to be construed most favorably to the insured.

An unqualified refusal by an insurance company to pay a loss based on facts within the company's knowledge, and made under such circumstances as to justify the insured in believing that the rendition of proofs would be a vain act, and that they would not be examined, is equivalent to an express agreement of waiver.

Where an accident insurance company denies all liability on the sole ground that notice of the accident had not been sent in time, it cannot

set up as a defense to the policy that the proofs of loss had not been furnished.

Argued Oct. 7, 1908. Appeal, No. 123, Oct. T., 1908, by defendant, from judgment of C. P. Jefferson Co., Aug. T., 1905, No. 334, on verdict for plaintiff in case of Clifton Hughes v. Central Accident Insurance Company of Pittsburg. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a policy of accident insurance. Before REED, P. J.

The facts are stated in the opinion of the Supreme Court.

Defendant presented, inter alia, these points:

1. If the plaintiff received the injury he alleges on December 14, 1904, the notice received by the company on January 31, 1905, was not a compliance by the plaintiff with the provision of the policy that " immediate written notice must be given the company at Pittsburg, Pa., of any accident and injury for which a claim is to be made, with full particulars thereof, and full name and address of the insured." *Answer:* Refused. [5]

4. There is no sufficient evidence that the company waived that provision of the policy which has just been referred to. *Answer:* Refused. If the jury find that the defendant denied all liability under the policy on the ground that the preliminary notice therein provided for had not been given in time, such denial of liability would be evidence of a waiver of proofs of loss, and the sufficiency of the evidence to establish such waiver is for the jury. [6]

8. Under the undisputed evidence in the case the plaintiff has not shown the irrecoverable loss of the sight of his eye within the provision of the policy entitling him to specific benefits for the irrecoverable loss of the sight of an eye within ninety days from the date of accident. *Answer:* Refused. [7]

The court below charged in part as follows:

[But what is meant by immediate written notice is notice within a reasonable time after the accident, and what is a

reasonable time is for the jury to determine under the facts and circumstances of the case.] [8]

[Under the peculiar circumstances of this case and especially in view of the fact that the plaintiff did not know and had no reasonable grounds for anticipating the result of the injury to his eye until on or about the time he notified the defendant company of the accident, I do not think the court is warranted in saying as a matter of law that that notice was not given in time, and I therefore submit it as a question of fact to be determined by the jury.] [9]

Verdict and judgment for plaintiff for $3,974.60. Defendant appealed.

*Errors assigned* among others were (5-9) above instructions, quoting them.

*Stephen Stone,* with him *William A. Stone, Charles Corbet, Edward A. Carmalt* and *Nathan L. Strong,* for appellant.—Notice was not given in time: Williams v. Preferred Mut. Accident Assn., 91 Ga. 698 (17 S. E. Repr. 982); Hatch v. U. S. Casualty Co., 83 N. E. Repr. 398; Ry. Pass. Assur. Co. v. Burwell, 44 Ind. 460; Travelers' Ins. Co. v. Nax, 35 Ins. Law Journ. 539; Dunshee v. Travelers' Ins. Co., 25 Pa. Superior Ct. 559; Merrill v. Ins. Co., 91 Wis. 329 (64 N. W. Repr. 1039).

*Cadmus Z. Gordon,* with him *Jacob L. Fisher,* for appellee, cited: Humphreys v. Benefit Assn., 139 Pa. 264; Reynolds v. Maryland Casualty Co., 30 Pa. Superior Ct. 456; McFarland v. Mut. Accident Assn., 124 Mo. 204 (27 S. W. Repr. 436); Kentzler v. American Mut. Accident Assn., 88 Wis. 589 (60 N. W. Repr. 1002); Mandell v. Fidelity & Casualty Co., 170 Mass. 173 (49 N. E. Repr. 110); Harnden v. Ins. Co., 164 Mass. 382 (41 N. E. Repr. 658); Home Ins. Co. v. Davis, 98 Pa. 280.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

The plaintiff, while a passenger in a railroad car, received a wound in his right eye through external, violent and accidental means, independently of all other causes, which resulted

in a total and irrecoverable loss of vision in the injured eye. The jury so found, upon evidence which, if convincing to them, was entirely sufficient to support their verdict. The only questions raised by the assignments which call for consideration, are those which challenge the sufficiency of plaintiff's compliance with the provisions of the policy under which he was insured, in the matter of notice and proofs. The policy contains the following provision: "Immediate written notice must be given to the company at Pittsburg, Pa., of any accident and injury for which a claim is to be made, with full particulars thereof, and full name and address of the insured." The accident occurred December 14, 1904; the written notice of the accident was not given to the company until January 27, following. Appellant complains that the delay in notifying the company was so great that the court should have decided it as a matter of law adversely to the plaintiff. It has been repeatedly ruled in actions under policies requiring immediate notice to be given of the accident, that the word "immediate" is to be construed as meaning a reasonable time after the accident, under the facts and circumstances of the particular case. Cases arise where the delay has been so great that the court is fully justified in ruling it as a matter of law; but this occurs only where the admitted facts and circumstances disclose nothing by way of extenuation or excuse. Where the facts are sufficient to account in some measure for the delay, without reflecting upon the diligence or good faith of the assured, it is for the jury to say whether the delay was reasonable or not under the circumstances. The present case is in some respects exceptional. The finding of the jury refers the plaintiff's loss of vision in his right eye to the accident which happened in a railroad car, thus described by Dr. Zeigler, an expert witness, called by the plaintiff: "A perforation of the lens by a minute foreign body, or of some anterior portion of the eyeball, which caused an inflammation of the tissues surrounding the lens, thereby disturbing its nutrition, a cataract resulting therefrom." When a passenger in a railroad car is so unfortunate as to get a cinder in his eye—and that is just what happened to this plaintiff—it is not such an unusual occurrence

as to occasion surprise, or create any special anxiety as to results, unless indeed the irritation and pain should long continue. A disappearance or subsidence of the irritation usually denotes, at least to people without technical or scientific knowledge in regard to such matters, that the foreign substance that caused the disturbance has not found lodgment in the eye, and it at once ceases to be a matter of concern. The plaintiff was made painfully aware of the fact that he had been struck in his right eye by a spicula of some sort, supposed by him to be a cinder. He called to his assistance a fellow passenger, who upon examination could find nothing foreign in the eye. The irritation and pain that followed the accident continued during the afternoon and night, but by the next morning both had subsided, and the inconvenience and discomfort, then but slight, soon disappeared entirely. The plaintiff resumed his work as a practicing dentist, and gave the accident no further thought. Several weeks afterwards, however, realizing some impairment of vision in the eye that had been injured, he had the eye examined by a physician who happened in his house on a social call. The examination there made was superficial, but the doctor expressed the opinion that a cataract was forming in the eye. Within a week or two after, either on January 4 or 9, the dimness of vision meanwhile having increased, plaintiff consulted Dr. Walters, a specialist, who found the beginning of a cataract, but no exciting cause for it. Now it may be that had the plaintiff been given to understand at either of these examinations, that the cataract forming in his eye, could be attributed to the injury he had received in the car, it would have been his duty at once to have notified the company of the accident. But it is impossible to derive any such fact from the evidence, at least with that certainty with which it must be made to appear before the court could accept it as a fact. Dr. Walters says that he thought that the cataract might be "traumatic" in its nature, but he does not say that he so told the plaintiff; and it is by no means certain that the latter would have understood its relation to the accident had he been so told. The association between cataract and a spicula of cinder which weeks before had found its way

within the eye and irritated it for a day, would not be likely to occur to the unscientific mind. It did not occur to Dr. Walters until his second examination on January 27, the day plaintiff sent his notice to the company; nor did it occur to Dr. Zeigler, another of plaintiff's expert witnesses, until after his second examination on May 13; and it has not yet occurred to Dr. Robinson, who testifying on behalf of the defendant, says there was no connection whatever between the cataract which blinded plaintiff's eye and the cinder accident, and that in all his experience, admittedly large, he has never seen a cataract caused by cinder getting in the eye. When did the plaintiff first have reason to believe that his loss of sight resulted from the accident in the car? The answer to this question would largely determine whether the notice to the company was unreasonably delayed. Like all other questions of fact in the case, it was for the jury; and the court very properly left it with them under very full and fair instructions as to the law. The notice in the case, though it did not indicate specifically the day on which the accident happened, stated the time approximately, and stated specifically where and under what circumstances it had occurred. Although directed to the agent of the company, and not to the home office, yet it was forwarded at once by the agent to the company and its receipt was acknowledged. In point of substance it fairly met the requirements of the policy.

The policy contained this further provision—"affirmative proof of death by external, violent and accidental means, or of loss of limb or sight, or of duration of disability, must also be furnished to the company within two months from the time of death, or loss of limb, or sight, or of the termination of disability." Nothing is specified as to the extent or character or mode of the proof required, except that it be affirmative. In its letter to the plaintiff acknowledging the receipt of the notice sent as to the accident, the company in positive and express terms refused to recognize any liability to the plaintiff, on the ground that the notice given, did not follow immediately upon the accident. This letter reads in part as follows: "We hardly feel, Doctor, that we can for a moment consider the claim, the notice of which comes to us at so late a date. If you

will kindly refer to your policy you will find that notice of accidental injury must be given to the company immediately. . . . We are extremely sorry that this matter was neglected on your part, but a safe and businesslike conduct of insurance business will not permit us to disregard so vital a provision of the contract." The week following the receipt of this letter, the plaintiff wrote to the company, stating as the reason of delay in giving notice of the accident, that he had not expected serious results, and that it was only when the doctor advised him fully as to the situation that he traced his present condition—loss of sight in the right eye—to the accident. The reply of the company under date of February 11 was another equally positive and explicit denial of liability, on the ground of delay in giving notice; but it expressed a willingness on the part of the company that the plaintiff submit the facts of his case, not proofs. The letter proceeds: "Now strictly speaking as we have said before, we cannot consider ourselves liable under our policy for the injury you suffered. Still we are perfectly willing, if you desire, that you submit the facts of your case. Perhaps there may be an equity in it, and we will look into the matter and allow that equity. Legally we are not liable and cannot bar out the conditions of our policy, but if you desire to fill up the enclosed blanks you may do so. We send them with reservation of all our rights, waiving under the conditions of the policy, but simply that you may present the facts to us, and that you may show under what basis you are asking us to recognize a claim or some equities for your disability and loss." The blanks furnished the company were filled up and forwarded April 4; the delay in forwarding being due to the absence of Dr. Walters. The blank filled up by Dr. Walters, accompanied by his jurat, may be fairly regarded as the affirmative proof required by the policy. It contained an express averment that plaintiff while riding in the train was struck in the eye by a foreign body, which lodged in the eye, and that some weeks later in examining the eye he found a cataract practically producing total blindness. If anything more than this was required by the company it should so have appeared in the policy. "While courts will extend all reason-

able protection to insurers, by allowing them to hedge themselves about by conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of construction, that as the language of the conditions is theirs, and is therefore in their power to provide for every proper case, it is to be construed most favorably to the insured: May on Insurance, sec. 175.

The sworn statement of Dr. Walters was affirmative proof of what was claimed by the plaintiff as to the cause of the accident and the extent of his injury. It was not, as we have seen, submitted as proof of loss; but it nevertheless answered the whole purpose of the policy requirements, in sustaining and corroborating the plaintiff's statement in its material features. It is unimportant what the purpose was in forwarding it, if it met the requirements of the policy. The learned trial judge so held and submitted it to the jury to determine whether it had been forwarded without unreasonable delay.

But apart from this, even though the proofs were defective and were not sent within the required time, the defendant was not in position to defend on any such ground. It disclaimed liability on the policy immediately upon receipt of notice of the accident, on the ground that the notice came too late. It asserted and reasserted its determination to refuse payment because of the plaintiff's default in this respect, and only sent the blanks for proofs to the plaintiff because of his importunity, and to the end that it might determine whether there were equitable considerations which should move them, not to pay a legal obligation, but rather to extend charitable relief. It is settled law that an unqualified refusal to pay a loss, based on facts within the company's knowledge, and made under such circumstances as to justify the insured in believing that the rendition of proofs would be a vain act, and that they would not be examined, is an equivalent of an express agreement of waiver. The rule is thus stated in May on Insurance, sec. 469: "A distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss. It is equivalent to a declaration that they will not pay though the proof be

furnished; and to require the presentation of proof in such a case, when it can be of no importance to either party, and the conduct of the party in favor of whom the stipulation is made, has rendered it practically superfluous, is but an idle formality, the observance of which the law will not require." The doctrine here expressed has received repeated recognition by this court. We need only refer to Penna. Fire Ins. Co. v..Dougherty, 102 Pa. 568; Inland Ins., etc., Co. v. Stauffer, 33 Pa. 397; Home Ins. Co. v. Davis, 98 Pa. 280; Lebanon Mutual Ins. Co. v. Erb, 112 Pa. 149.

A review of the whole case has satisfied us that appellant is without cause of complaint. It was fairly submitted on the facts, and the instructions as to the law were correct. Appellant was given a larger latitude in its defense than it was entitled to claim.

Judgment affirmed.