## Deaven v. Baumgardner et al.

*Mark Garber, Thomas D. Caldwell,* and *Fox & Stoner,* for plaintiff.

*Earl V. Compton* and *Herman Goldstein,* for garnishee.

WINGERD, P. J., thirty-ninth judicial district, specially presiding, September 25, 1947.—Robert M. Eppley was the owner of an automobile, on which he carried liability insurance in the Ohio Casualty Insurance Company. Eppley was in the Army and left his automobile with his wife, Mrs. Theresa Eppley. The title was in both names. On October 4, 1945, Walter Baumgardner, while driving the automobile, was involved in an accident in which Beulah C. Deaven, a passenger, was injured. Mrs. Eppley got in touch with G. Hershey Eby, who represented the Ohio Casualty Insurance Company and was the company's adjuster or claim man in the Harrisburg office, having charge of all claims against the Ohio Casualty Insurance Company in 11 counties surrounding Harrisburg and being the person to whom all papers and information relative to claims arising in that territory were referred. Mr. Eby investigated the accident, as the accident in question happened in Cumberland County, and that county was in his territory. Walter Baumgardner, the driver of the car, so far as is disclosed, seems to have had no communication with the insurance company. The injured person, Miss Deaven, brought suit in Cumberland County against Baumgardner and recovered a judgment of $2,500 against Baumgardner. On this judgment, an attachment execution was issued, naming the Ohio Casualty Insurance Company, garnishee. The insurance company denied liability on the grounds, first, that the policy of insurance did not cover Walter Baumgardner, the driver of the car, because at the time of the accident he was operating it without the permission of the named insured, Robert M. Eppley, and in violation of the express prohibition of Mrs. Eppley, the person in whose care and custody Mr. Eppley had entrusted the automobile, and second, that there was no liability upon the policy for the reason that the insured, as defined in the policy, did not immediately forward to the insurance company the summons or

other process received by him or his representative in the suit brought by the injured person against the driver of the car and that the company was without knowledge of such suit until after verdict.

Interrogatories were filed and answers thereto, which raised questions of fact, and the matter was tried before the court* and a jury. The court not only submitted the matter of recovery to the jury generally but submitted three specific questions. First, "Was the actual use of the automobile by Walter Baumgardner with the permission, express or implied, of Robert M. Eppley?" Second, "Did Walter Baumgardner, after action against him by Beulah C. Deaven, immediately forward to the insurance company every demand, notice, summons or other process received by him or his representative?" Third, "Did the insurance company waive compliance with the requirements of the policy set forth in question 2?" The jury found in favor of plaintiff, Beulah C. Deaven, and against the Ohio Casualty Insurance Company in the sum of $2,598.75 and answered the first question "yes," the second question "no" and the third question "yes". Motions for judgment n. o. v. and a new trial were filed by the insurance company. No question was raised concerning the jury's answers to the first or second questions, but the insurance company contends that there was not sufficient evidence of waiver to be submitted to the jury and that, as a matter of law, there was no waiver by the insurance company.

The policy of insurance involved contains the following provisions:

"2. Notice of Claim or Suit. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

---

* Hon. Fred S. Reese, P. J., Ninth Judicial District, who died May 30, 1947.

"6. Action Against Company. Under the bodily injury liability and property damage liability coverages no action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company."

"7. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an officer of the Company and countersigned by an authorized company representative."

As the jury has found that Baumgardner was driving the car with the permission of the named insured, Baumgardner is included in the term "insured" when used in the policy, so far as the present accident is concerned, under policy's definition of "insured".

It is undisputed that neither Walter Baumgardner, the driver of the car, nor Beulah C. Deaven, the injured person, gave notice to the insurance company that suit was brought or forwarded the summons and other papers in the suit to it. Such failure on the part of the insured and the injured person is sufficient to relieve the insurance company from liability unless it has waived the necessity of compliance with such provision: Butler C. Co. to use v. Springfield F. & M. Ins. Co. et al., 296 Pa. 552, 557-558; Keyes to use v. Continental Casualty Co., 121 Pa. Superior Ct. 359, 370.

The main question before us is whether or not there was sufficient evidence to sustain a finding that there was a waiver of the provisions of the policy relating to notice of suit, etc. The important evidence in rela-

tion to waiver is the following testimony of Thomas D. Caldwell, Esq.:

"A. I was employed by Miss Deaven on November the 6th, 1945, and sometime thereafter I had ascertained that the insurance in connection with this accident was carried by the Ohio Casualty Insurance Company which has an office in.the Blackstone Building in Harrisburg. I called that office and I spoke with a Mr. Eby, who was in charge of claims. I told Mr. Eby that I now had the case of Miss Deaven and that I understood that they had refused to make any settlement with her but I thought that before I brought suit I ought to call and ask whether or not they wished to reconsider their position. Mr. Eby replied that—not the exact words—in substance—that they had refused to make a settlement with Miss Deaven because Walter Baumgardner, the driver of the car, did not have his sister's permission when he drove the car and, therefore, in their opinion, the accident was not covered under the terms of their policy. He said, however, to the best of my recollection, that he would again take the matter up with the home office and would let me hear from him later. It is my recollection that sometime after that I called him again and asked him if he had heard and he said not yet. And then there was a third call. . . . I don't know whether I made it to him or whether he made it to me . . . in which he said he had heard from the home office; that they reaffirmed their position; that they denied coverage under the policy with respect to this accident.

"Q. What, if any, conversation was there between you and Mr. Eby about the bringing of suit on behalf of Beulah Deaven against Walter Baumgardner?

"A. I told him in the first conversation that I was going to bring suit for Miss Deaven unless there was an adjustment, and in the final conversation I said that, 'Well then, I will have to—' after he said the home office had reaffirmed its position, I said, 'I will have to

bring suit', and he said, in substance, 'Yes, I guess you will have to do that'."

Mr. Eby denied these conversations but, as the jury found there was a waiver, they must have believed Mr. Caldwell and at any rate, in considering a motion for judgment n. o. v., we must consider all of the evidence favorable to plaintiff as true: 6 Standard Pa. Practice 408, 409 and cases there cited.

" 'Waiver' has been defined as a voluntary intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it": 67 C. J. 289, 291.

"Waiver may be either express or implied, by word or conduct, by agreement or conduct": 67 C. J. 304. In Pennsylvania, the courts have fully recognized that there may be an implied waiver, by the conduct or oral representations of the agent of an insurance company, of a stipulation in a policy, which is a condition precedent to liability, such as proof of loss, notice of suit, delivery of summons, etc.: Hughes v. Central Accident Ins. Co., 222 Pa. 462, 469, 470; Slater v. General Casualty Co. of America, 344 Pa. 410, 415, 416. This is also true, although the policy expressly defines the manner in which a waiver of any of its provisions must be made. See Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 111. It is said in Gough v. Halperin, 306 Pa. 230, 234:

"True, the policy provides that its stipulations can be changed only by endorsement signed by the president, vice-president or secretary, and that no waiver thereof can be made by an agent. It is settled in Penn-

sylvania that regardless of such provision in the policy, stipulations as to notice, proof of loss, etc., may be waived by parol."

"The rule which is most favorable to the insured and, it may be observed, is well supported by authorities, is that policy provisions which limit the power of insurance agents or other representatives of the insurer to waive conditions of the policy or restrict the manner in which waivers may be made do not supersede the recognized principles of the law of waiver and estoppel, and are not conclusive so as to prevent the officers or agents of the insurer through whom it must act in the transaction of its business, and the conduct of its affairs, from binding the insurer by a waiver of a condition or from creating an estoppel against it to assert a breach of condition in avoidance of the policy": 29 Am. Jur. 623, 624, §820.

"Another rule favoring the insured and adopted or recognized by the overwhelming weight of authority is that a clause in a policy of insurance prohibiting any waiver unless indorsed thereon, or otherwise restricting the authority of agents to waive policy provisions, refers only to those provisions of the policy which enter into and form a part of the contract of insurance, and which may properly be designated as conditions to its formation and existence. According to this rule, such a clause has no reference to those stipulations which are to be performed after a loss has occurred or as conditions to the payment or adjustment of a loss, such as giving notice or furnishing proofs of loss, submitting to arbitration, etc.": 29 Am. Jur. 623, §819. See Gough v. Halperin, 306 Pa. 230, 235.

Of course, the agent or representative of the insurance company must, at least, be apparently authorized to make the statements which constitute the implied waiver. In the instant case, the representative of the insurance company, who made the statement that the insurance company had determined that the policy did

not cover Baumgardner, the driver of the car, because he did not have permission of the insured to drive it, had charge of the adjusting of claims in 11 counties, with his office at Harrisburg, Pa., was said to have issued the policy in question, received notice of and investigated the accident and, as a representative of the insurance company, stated that, after communicating with the home office, it reaffirmed its position and denied coverage under the policy. These facts are sufficient to make the insurance company responsible for the statement that it denied liability on the ground of noncoverage, that is, that it was not liable for any injuries sustained by the action of Baumgardner and he was not an "insured" under the provisions of the policy as he did not have permission of the named insured to drive the automobile mentioned in the liability policy: Gough v. Halperin, 306 Pa. 230, 233, 234; Arlotte et al. v. National Liberty Insurance Co., 312 Pa. 442, 447; Hartford Accid. & Indem. Co. v. Randall, 125 Ohio 581, 183 N. E. 433; State Auto. Mut. Ins. Assn. v. Lind, 122 Ohio 500, 172 N. E. 361, 362, 363.

Clearly there is present in this case abundant evidence to support a finding that the statement of Eby that garnishee denied liability on the ground of noncoverage is binding upon garnishee, especially his statement, as garnishee's agent, that the home office of garnishee reaffirmed the position that garnishee was not liable because of noncoverage: Gough v. Halperin, 306 Pa. 230, 234.

A denial of liability on the ground that there is no contract of insurance or that the policy does not cover the loss in question is a statement which amounts to a waiver of such conditions precedent to liability, contained in the policy, as giving notice of accident, giving notice of suit and forwarding complaint, process and other suit papers to the insurer.

In Slater v. General Casualty Co. of America, 344 Pa. 410, 415, 416, it is said:

"The second respect in which defendant asserts Pellican (the insured) failed to comply with the terms of the policy was in not forwarding to defendant the summons and statement of claim in the trespass action. But long before the necessity arose for compliance with this requirement, defendant company had, through the oral representations of its agent Allen, and through its conduct in not replying to the letter of Pellican's attorney, denied liability on the ground that the policy had been cancelled. Defendant, through interrogatories put to its home office employee, C. B. Mooney, admitted that this was the reason for not answering the letter. In view of this attitude on defendant's part the insured properly thought it useless to comply further with the requirements of the policy, and refrained from doing so. In this he was justified, for he was not required to do a vain thing. In Arlotte v. Nat. Liberty Ins. Co., 312 Pa. 442, where it was held that an agent's representation that the loss in question was not covered by the policy excused plaintiff from complying with its terms regarding proofs of loss, we said (p. 445): '. . . an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition.' We do not mean by this to hold that in all cases denial of liability on one ground operates as a waiver of all other grounds. The rule is correctly stated in Welsh v. London Assurance Corp., 151 Pa. 607, at p. 618: 'No party is required to name all his reasons at once, or any reason at all, and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce it now would be unfair or unjust. . . .' Obviously, if one party to a contract denies that it is any longer in force, the other is thereby led to believe that compliance with its condi-

tions on his part will be of no avail to protect his rights thereunder. *We are of opinion that the acts of defendant by its agent were such that a waiver of the requirements of the policy regarding subsequent duties on the part of insured is implied by law, and that therefore defendant is now estopped to set up non-compliance as a defense to liability.*" (See Fedas v. Ins. Co. of State of Pa., 300 Pa. 555.) (Italics supplied.)

In John Alt Furniture Co. v. Md. Casualty Co., 88 F. (2d) 36, a case in which insurer denied liability on the ground that the policy did not cover the accident, the injured person sued the insured and recovered judgment; the insured paid judgment and sued the insurer for reimbursement; the insurer defended on the ground that the insured did not give notice of accident or forward summons, etc., in suit to insurer in accord with provision of policy. The court held, after a full discussion (p. 41):

"We adhere to the rule. Applying it to the facts in this case, we hold that the Maryland, by denying liability on the ground that its policy did not cover the accident which caused the loss to its assured, abandoned its defense of lack of notice and failure to forward process."

In Hughes v. Central Acc. Ins. Co., 222 Pa. 462, 469, 470, we find this statement:

"It is settled law that an unqualified refusal to pay a loss, based on facts within the company's knowledge, and made under such circumstances as to justify the insured in believing that the rendition of proofs would be a vain act, and that they would not be examined, is *an equivalent of an express agreement of waiver.* The rule is thus stated in May on Insurance, sec. 469: 'A distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss. It is equivalent to a declaration that they will not pay though the proof be furnished; and to require the presentation of proof in such a case, when it

can be of no importance to either party, and the conduct of the party in favor of whom the stipulation is made, has rendered it practically superfluous, is but an idle formality, the observance of which the law will not require.' The doctrine here expressed has received repeated recognition by this court.' We need only refer to Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568; Inland Ins., etc., Co. v. Stauffer, 33 Pa. 397; Home Ins. Co. v. Davis, 98 Pa. 280; Lebanon Mutual Ins. Co. v. Erb, 112 Pa. 149." (Italics supplied.)

The statement by Eby was a clear denial of liability on the ground of noncoverage but garnishee contends that it is of no avail because it was not made to Baumgardner, the insured, as defined in the policy, but was made to the representative of the injured person, her attorney, Mr. Caldwell, and never communicated to Baumgardner.

The injured person has the right to give any notice required by the policy or fulfill any condition of the policy, the failure or breach of which would prevent recovery from the insured. In McClellan et ux. v. Madonti et al., 313 Pa. 515, the injured person obtained judgment against the insured, Madonti, and brought in insurer, in attachment sur judgment, as garnishee and garnishee defended on the ground that it had no notice of suit as provided in the policy, for although it had notice from the attorneys of the injured party, such was not proper as notice must come from the assured. The Supreme Court, speaking through Justice Linn, held (pp. 517, 518):

"Appellant contends that it was not required to pay any attention to notice from plaintiffs' attorneys; that notice must come from the assured. Madonti's negligence brought plaintiffs within the class of beneficiary contemplated by, and with a conditional right in, the policy. As one of the conditions required notice to be given and as plaintiffs had become entitled to performance by appellant, they must be treated as authorized to comply with the condition and to give any notice

required, or, indeed, to perform any other condition, breach of which by the assured, would destroy plaintiffs' right to performance by the insurer. Compare Graham v. U.S.F. & G. Co., 308 Pa. 534, 541, 162 A. 902; Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 275; Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866". Morris et al. v. Bender et al., 317 Pa. 533, on page 537 cites this case with approval.

As the injured person has the right to give notice and fulfill conditions to the same extent as the insured, it follows logically that a statement made by a representative of the insurer which, if made to the insured, would constitute a waiver of certain conditions in the policy and relieve him from compliance with such conditions should relieve the injured person from such compliance and constitute a waiver when made to the injured person or his attorney. This conclusion is supported by several authorities and is, as we have stated, the logical one when we start with the premise that the injured party has the right to fulfill any of the conditions in the policy imposed upon the insured, a breach of which would preclude recovery on the policy, which is clearly the law in Pennsylvania.

In 8 Appleman, Insurance Law and Practice 146, §4747, it is said: "An insurer's absolute refusal to pay or denial of liability has been held to dispense with the necessity of making proof of loss. This was also true where the insurer had made a denial of liability to the attorney for the injured person": Poorman v. Fort Armstrong Auto Underwriters, 269 Ill. App. 466, is cited in support of this latter statement. In this case, the injured party, after obtaining judgment against the insured, brought a creditor's bill against the insurer. The insurer defended on the ground of lack of the notice required by the policy. It was shown that the attorney for the injured person had corresponded with a representative of the insurer relative to its liability under the policy and that the insurer had re-

fused to pay on the ground of noncoverage, claiming that the vehicle was operated unlawfully at the time the loss occurred. The court held that there was evidence of actual notice and, as liability was denied, the insurer was not in position to demand further notice.

In Hartford Accident and Indemnity Co. v. Randall, 125 Ohio 581, 183 N. E. 433, in the Supreme Court of Ohio, in which Randall, the injured person, recovered a judgment against Anderson, the driver, Stevenson, the owner of the car, had a policy of liability insurance with the Hartford Accident and Indemnity Co., which covered not only the owner but also anyone driving the car with his permission. Randall brought an action against the insurer under an Ohio statute, which gives the injured person an action against the insurer for the insurance money to be applied to the satisfaction of the judgment obtained against the insured. The insurer defended on the ground that no notice of the commencement of the suit was given to it and that it had no knowledge of the suit until after default judgment was rendered. The policy required that the insured give notice to the insurer of suit brought against the insured, together with summons or other persons served therein. The injured party, Randall, replied that Keane, the agent of the insurer, with authority to compromise, adjust and settle claims, conferred with his attorney and, after investigation thereof, told the attorney that the company disclaimed all liability for the accident caused by Anderson. The interview between the attorney for the injured party and the adjuster for the insurer was never reported to Anderson and there was no evidence that Anderson had any knowledge of the disclaimer of liability on the part of the adjuster. The court said (p. 583):

"Helman, the attorney, testified concerning the negotiations with Keane, and, although his testimony was contradicted by Keane, the jury evidently believed Helman. His statement must therefore be accepted by this court. Omitting unnecessary details, his testimony

was as follows: 'I said to him, "I am going to sue it and shall I send you a copy of the petition?" He said, "No, it is no use, we are not going to defend Anderson."'

"The sole question in this error proceeding is whether, under the allegations of the reply, and the testimony above quoted, the waiver and estoppel are sufficient in law and in fact." The court held the statements of the adjuster binding upon the insurer. It then stated: "We shall next inquire whether the statements made by Keane to the attorney for Randall, that the company would not defend Anderson and that he need not furnish the company with a copy of the petition, were available to Randall as the basis of estoppel without having been communicated to Anderson.", and went on to hold that the injured person had the right to comply with the terms and conditions of the policy, which is in accord with the Pennsylvania rule for the rights of the injured party under the Ohio statute seem to be the same as his rights under attachment proceedings in Pennsylvania in which the insurer is garnishee. The court then held that the statement made by the adjuster to the attorney for the injured party was sufficient to create an estoppel by reason of which the insurance company was estopped from thereafter asserting its right to a compliance with the condition of the policy requiring notice, etc., and affirmed the judgment for the injured party and against the insurer. The court uses the word "estoppel", but we find that the answer of the injured party claimed an estoppel to set up the conditions of the policy because of the waiver by the insurance company's duly authorized agent and the court itself, as hereinbefore appears, said the sole question was waiver and estoppel. This case involves practically the same set of facts as the instant case and the court discusses the questions here involved, basing its opinion on the conclusion that if the injured party has the right to fulfill the conditions

and provisions of the policy, a breach of which would preclude recovery, then statements amounting to a waiver of the provisions of the policy, made to the attorney representing the injured person, relieve the injured person from fulfilling such provisions and preclude the insurer from escaping liability on the ground that there was a breach of the conditions of the policy although the statement, constituting the waiver, had not been communicated to the insured.

It is our opinion that garnishee, the insurer, is bound by the statements made by Eby to Caldwell and, as such statements, denying liability on the ground of noncoverage, were made after the insurance company had full knowledge, having investigated the accident, and before suit was brought by the injured person, Miss Deaven, that they constituted a waiver of the provisions of the policy requiring notice of suit and forwarding of summons, etc., to garnishee, and precluded garnishee from successfully defending the claim of the injured party on the ground of the breach of such conditions, although they were not communicated to Baumgardner, the insured. In accordance with this conclusion, we must refuse the motion for judgment n. o. v.

So far as the motion for a new trial is concerned, it was not strenuously pressed but it was mentioned in garnishee's brief on the ground that "the court in its charge committeed basic error in submitting the question of Walter Baumgardner, defendant, being lulled into security and being misled by the statements of Mr. Eby in the absence of any evidence that he had knowledge of such statements or placed any reliance thereon". The motion for a new trial does not mention, as a reason therefor, error in any particular part of the court's charge. It states that the court erred in submitting the question of waiver to the jury as there was no evidence to support a finding of waiver, that the jury's answer to the third question is contrary to the

evidence, that the verdict is against the evidence, is not supported by the evidence and is against the law. These reasons merely raise the same questions as raised in support of judgment n. o. v. and have been considered in this opinion. Furthermore, at the conclusion of the charge, the court inquired, "Does either side require anything further?" The attorney for garnishee said "Would you note on the record, please, we except to so much of the court's charge as submits the question of waiver to the jury; and also, I think you, in submitting that, you overlooked the fact that Mr. Caldwell's testimony was that that was never communicated to anyone. Baumgardner was never informed of that." The court then charged the jury with reference to Mr. Caldwell's testimony as it related to any notice to Baumgardner of Eby's statements and, after finishing, asked "Is that satisfactory?" The attorney for garnishee replied "I believe that calls their attention". No exception was taken to this particular part of the court's charge and no general exception to the charge was taken by garnishee. We do not see that garnishee has any standing now to complain of the court's charge, except as to submitting the question of waiver to the jury, which, as we have stated, involves the same questions as the motion for judgment n. o. v. In fact, there was no evidence showing that the statements of Mr. Eby were communicated to Mr. Baumgardner and the court's charge suggested that knowledge of them on the part of Baumgardner was necessary, which was favorable to garnishee. We see no grounds for granting a new trial for the jury, in finding a waiver, must have found Caldwell's testimony to be true, which is the controlling matter concerning which there was contradictory evidence.

Now, September 25, 1947, motions for a new trial and for judgment n. o. v. are refused and it is ordered that judgment on the verdict be entered upon payment of the jury fee.