Brakeman, Appellant, *v.* The Potomac Insurance Company.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Paul D. Shafer, Jr.,* with him *Mark D. Prather,* and *Thomas, Shafer, Walker, Dornhaffer & Swick,* and *Prather & Prather,* for appellant.

*James D. Cullen,* with him *John M. Wolford,* and *MacDonald, Illig, Jones & Britton,* for appellee.

OPINION BY VAN DER VOORT, J., September 22, 1975:

On March 3, 1970, the plaintiff-appellant, Allan E. Brakeman was involved in a motor vehicle accident with one David F. Baker, in Meadville, Pennsylvania. Baker, at the time a 17 year old, was insured by The Potomac Insurance Company, the defendant-appellee. As a result of the accident, Brakeman suffered severe injuries which resulted in hospitalization, loss of income and permanent disability; his out-of-pocket expenses were $6,545.50. Although the accident occurred in early March, the appellee

insurance company did not receive written notice of the accident until October 6, 1970.[1]

Taking the position that the notice it received from its insured was unduly late, appellee refused to defend the claim against Baker. The appellant filed suit against Baker on February 24, 1971 and on January 10, 1972, a verdict in the sum of Ten Thousand ($10,000.00) Dollars, the exact amount of the Baker's insurance coverage, was directed by the lower court, by agreement of the parties, and without actual trial. As noted earlier, the appellee did not participate in that action.

The instant action arose when appellant Brakeman brought suit directly against appellee to recover the amount of his verdict against the insured. A jury trial was held; the jury awarded appellant a general verdict of Ten Thousand ($10,000.00) Dollars and gave the following answers to specific interrogatories:

1. The first written notice to appellee was given October 6, 1970.

2. No oral (telephonic) notice had been given prior to that written notice.

3. There were sufficient extenuating circumstances to postpone the giving of the accident notice until October 6 or 7, 1970.[2]

Upon motion of the appellee however, the lower court granted judgment *non obstante veredicto*. The lower court's action, supported by a well written opinion, essentially was made in reliance upon the circumstances of the late notice to the insurer, some seven months after

---

1. The Baker vehicle was owned by the father of the driver. Some evidence was adduced at trial concerning alleged efforts by Baker's father to provide oral notice by telephone to his insurer a short time after the accident.

2. Due to our holding in this case, extended discussion of the jury's finding of "extenuating circumstances" regarding the giving of tardy notice would not be warranted.

the date of the accident. The lower court noted appellate cases in our Commonwealth which have held that if an insured gives notice of an accident to his insurance company as late as seven months after an accident, he has failed to comply with a "reasonable notice" clause in his policy.[3] See *Hachmeister, Inc. v. Employers Mutual Liability Insurance Company of Wisconsin,* 403 Pa. 430, 169 A.2d 769 (1961) ; *Edelson v. American Employers Insurance Company of Boston, Mass.,* 92 Pa. Superior Ct. 90 (1927)..

On this appeal, appellant argues, *inter alia,* that the presumption of prejudice which exists in Pennsylvania, concerning late notice to an insurance company by the insured, should be altered or eliminated. He maintains that the present rule is "harsh" and suggests the substitution of a rule requiring the insurance company to show some prejudice it suffered through late notice before it is excused from performance on the insurance contract. While we do not adopt completely the appellant's suggested course of change, our review and comparison of case developments in our sister states concerning this issue, together with a reexamination of our present law and its underlying philosophy, compels us to conclude that some change and clarification is in order.

The present rule in our Commonwealth is that the satisfaction of the prompt notice clause in an insurance policy ". . . is a condition precedent to the imposition of liability. Failure to comply releases [the insurer] *even*

---

3. Such clauses are uniformly found in modern insurance policies. *Meierdierck v. Miller,* 394 Pa. 484, 147 A.2d 406 (1959). The pertinent language in appellee's policy in the instant case is: "In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."

*though no prejudice may have resulted.*" [emphasis supplied] *Meierdierck v. Miller, supra,* 394 Pa. at 486, 147 A.2d at 408. This rule is a severe one which has been tempered by the proviso that "extenuating circumstances" may allow an otherwise untimely, delayed notice to suffice as complying with the notice provisions of an insurance policy. *Hughes v. Central Accident Insurance Company,* 222 Pa. 462, 71 A. 923 (1909).

The above quoted "rule", and the "extenuating circumstances" exception, while present in our law for many years, can be seen to cause confusion, lack of consistency, and possibly unconscionable results. The instant case is a good example. It has been recognized that the sufficiency of compliance with the notice provision in an insurance policy varies with the circumstances of each case. *Unverzagt v. Prestera,* 339 Pa. 141, 13 A.2d 46 (1940). Timeliness of notice is a *jury* question where extenuating circumstances appear. *Meierdierck v. Miller, supra; Hughes v. Central Accident Insurance Company, supra.* Where the delay is unaccompanied by extenuating circumstances, the question of whether or not the insured has complied with the notice provision is one for the court. *Jeannette Glass Co. v. Indemnity Insurance Company of North America,* 370 Pa. 409, 88 A.2d 407 (1952). In the instant case the appellant's evidence disclosed some alleged extenuating circumstances to excuse the tortfeasor's delay in notice. The jury, in response to a special interrogatory, found that such factors sufficiently excused the delay in this case. The lower court, in granting judgment *non obstante veredicto,* explained in its opinion that the extenuating circumstances in *its opinion* were not sufficient *as a matter of law* to support the jury's finding. This resume of facts is not intended to imply criticism of the lower court's actions, which we find were based on sound reasoning and legal judgment. However, they do indicate the confusion which may arise in these cases.

It was also noted that inconsistencies can arise. It has been held that the following delays in notice after an accident would not result in the insurer escaping liability: almost five months (*Wardle v. Miller*, 375 Pa. 565, 101 A.2d 720 (1954)); 20-month delay (*Hall v. Aetna Life Insurance Co.*, 79 P.L.J. 284 (1931)); 17-month delay (*Ripepi v. The American Insurance Companies*, 349 F.2d 300 (3d Cir. 1965)). On the other hand, the following delays in notice have precluded claimants from recoveries: 5 months (*Hachmeister, Inc. v. Employers Mutual Liability Insurance Company of Wisconsin, supra*); 3½ months (*Unverzagt v. Prestera, supra*); 10 weeks (*Edelson v. American Employers Insurance Company of Boston, Mass., supra*).

Another area of confusion and inconsistency is apparent when one examines our law in closely related and analogous areas. Thus it is held that the *insurer must show prejudice* to avoid liability under the policy on the ground that the notice was not received in the *proper manner. Bowman Steel Corporation v. Lumbermens Mutual Casualty Company*, 364 F.2d 246 (3d Cir. 1966). Likewise, *an insurer* seeking to cut off responsibility, on the ground that its insured did not comply with a policy provision requiring prompt forwarding of suit papers, *must establish:* that the provision was actually breached, and that the breach resulted in substantial prejudice to its position. *Hargrove v. CNA Insurance Group*, 228 Pa. Superior Ct. 336, 323 A.2d 785 (1974). While the differences in treatment of late receipt of notice, improper receipt of notice and late receipt of suit papers can be justified or explained in some ways, the appearance of inconsistency cannot be denied.

It was noted above that arguably unconscionable results may arise in the situation where the passage of time (between the injury and notice) creates a conclusive presumption of prejudice to relieve the insurer from liability. The present doctrine exalts form over substance; an in-

surer, who has collected full premiums for coverage, despite the absence of any prejudice, may deny the only available compensation to the completely innocent victim of a tortfeasor, merely by the passage of some time between the incident and the report to the insurer. Reasonable men, asked to design a "fair rule" to cover this situation, would not adopt the conclusive presumption which exists in our law.

While criticizing the present rule, we certainly must recognize that it was not adopted in the absence of reason. "The 'reasonable notice clause' is designed to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of all, and to be able to make a timely defense against any claim filed. [citation omitted] The possibility that a settlement or a verdict more favorable to an insurer might be achieved if prompt notice had been received by it, cannot be discounted." *Hachmeister, Inc. v. Employers Mutual Liability Insurance Co. of Wisconsin, supra,* 403 Pa. at 433, 169 A.2d at 770.

With a recognition of those policy considerations underlying the present rule, but with the realization that some alteration of the rule is merited, we have examined, *inter alia,* the practices in our sister states in this area. In 8 *Appleman, Insurance Law and Practice,* §4732, a well recognized treatise on insurance law, cases from all jurisdictions are collected. Our review of those cases cited reveals a modern trend in our country toward the elimination of forfeited coverage in the absence of any prejudice to the insurer by virtue of late notice of the incident from which the claim arose.[4] Some jurisdictions require the insurer to prove prejudice to escape responsibility; others require the claimant to show an absence of prejudice to the insurer (as a result of late notice) in order to main-

---

4. No good purpose would be served here by a comprehensive review and regurgitation of all of the cases cited in *Appleman, supra.*

tain a recovery. We believe the latter policy is preferable. As is stated in *Appleman, supra,* §4732:

> "Many courts have adopted the rule that it is unnecessary for the company to show that it was prejudiced by the neglect of the insured in order to assert this policy defense, it being frequently stated that prejudice is presumed under these circumstances. This does not mean that upon a showing of delay, alone, the insurer walks out of court free of potential claims. It means, rather, that prejudice being a difficult matter affirmatively to prove, it is not required to make such proof. Prejudice may be presumed, with the burden upon the one seeking to impose liability to show that no prejudice did, in fact, occur—for example, that a complete investigation was made by another insurer or by competent persons who turned over the results to the 'late notice' insurer.

> "A few courts, however, have adopted a so called rule of 'substantial prejudice' which requires that the insurer, in order to be relieved of liability, demonstrate that it was materially and substantially hampered in the making of its defense or in the discovery of facts by the lack of timely notice. Since it is often impossible for the insurer to know what witnesses it would have found or what facts it could have ascertained had immediate notice been given and a prompt investigation made, it is submitted that this test is unworkable. The burden should be placed upon the one seeking to recover."

The thoughts of the commentator are sound. Placing the burden of proving prejudice upon the insurer would essentially be similar to requiring it to disprove a negative. The insurer's *lack of knowledge* of particular facts helpful to a defense may also operate to make it impossible for the insurer to show the underlying prejudice.

Another sound reason exists for placing the burden of disproving prejudice upon the claimant in the case of late

notice to an insurer. The law which has developed concerning notice to an insurer has been based upon a breach of contract theory; the insurance contracts, and not the law, required the giving of prompt notice. As was noted in *Hachmeister, Inc. v. Employers M. L. Insurance Co.*, *supra*, 403 Pa. at 433, 169 A.2d at 770: "Therefore, a contract requirement that notice [be] given to the insurer within a reasonable time will be strictly enforced." If there has been a breach of such a provision, we have already shown that it may be excused if *extenuating circumstances* are shown by the coverage claimant. It is only just that if another type of excuse, lack of prejudice, can operate to erase the breach caused by late notice, it be the burden of the party benefiting by this excuse to prove it exists, rather than the insurer, who was the non-breaching, and presumably prejudiced party.

To recapitulate, we hold that late notice to a liability insurer of an event possibly leading to claims against the coverage, in violation of a policy provision requiring prompt notice, and in the absence of extenuating circumstances, creates a presumption of prejudice to the insurer. However, in departing from prior holdings, we rule that this presumption of prejudice may be overcome by proof by the claimant that the insurer was not prejudiced by the tardy notice.

One further matter must be discussed in relation to the instant appeal. The plaintiff-appellant claimed that the underlying question of liability of the insured in the accident cannot be relitigated in the situation where a judgment had been entered against the insured, after the insurance company refused to defend or settle the claim. The lower court, in discussing this issue, pointed out that while it did not have to meet the point due to its disposition of the case, it would have allowed the insurer to litigate the liability question.

The insurance policy in this case provides: "No action shall lie against the company unless, as a condition prece-

dent thereto, the insured shall have *fully complied with all of the terms of this policy,* nor until the amount of the insured's obligation to pay shall have been finally determined either by *judgment against the insured after actual trial* or by written agreement of the insured, the claimant and the company." [emphasis supplied] The appellee notes that not only did the insured fail to comply with all of the terms of the policy (i.e., timely notice), but also that the liability of the insured was not determined after "actual trial."

The appellant cites *Murphy & Co. v. Manufacturers' Casualty Co.,* 89 Pa. Superior Ct. 281 (1926), as authority for his position. While at first glance that case would appear to provide authority for appellant's position, a closer examination reveals it is inapposite. In *Murphy, supra,* the insurer at no time contested the question of the insured's liability or the reasonableness of settlement.

In the instant case, where the insurer contests both, the facts of the accident were never proven in any judicial forum. The settlement figure was, by admission of the appellant, reached solely by virtue of the fact that it was the maximum of the insurance coverage enjoyed by the alleged tortfeasor insured. Under these circumstances, we hold that the basic questions of the liability of the insured and the damages, if any, may be litigated by the insurer in the instant case. See *Martinique Shoes, Inc. v. New York Progressive Wood Heel Company,* 207 Pa. Superior Ct. 404, 217 A.2d 781 (1966).

Reversed and remanded for new trial.

---

CONCURRING OPINION BY CERCONE, J.:

The law abhors a "forfeiture" almost as devoutly as nature abhors a vacuum; and, jurists press to find grounds consistent with legal theory to avoid the occurrence of forfeitures. From this view is derived the notion that "extenuating circumstances" may excuse the non-occur-

rence of a condition precedent to an insurance company's obligation to pay under its agreement with its insured. The abhorrence of forfeitures infects laymen also; so that, in the jury trial below, we find the jury holding that "extenuating circumstances" excused the condition that the insurance company be notified "as soon as practicable" of a potential claim, despite the fact that there was no credible evidence to support that conclusion. Therefore, in granting the insurer's motion for judgment n.o.v., the judge properly concluded that there was no extenuating circumstance shown to postpone or excuse the condition of timely notice.[1]

On the other hand, I agree with the majority that extenuating circumstances should not be the sole basis upon which the timely notice provisions in insurance policies may be excused. The difficulty with that "rule" is that it treats only part of the question with which we should be concerned; i.e., while it directs the inquiry to whether the insured's dereliction is excusable by circumstances, it fails to lead the court or the jury to consider whether excuse of the condition would put the insurance company in a significantly more difficult position than it would have been in had the insured provided timely notice.[2] The calculus of the law enables us to adopt and apply a rule which more consistently produces an equitable result than does the extenuating circumstances rule.[3]

---

1. The court expressly refused to charge that the insured's age, seventeen years and seven months at the time of the accident, could constitute an extenuating circumstance.

2. Extreme forfeiture by failure of the condition is a virtual "given" in these insurance cases.

3. It has been suggested that employment of a "prejudice" standard for excuse of a reasonable notice provision has a significant practical impact on insurance companies in the context of their ability to ferret out fraudulent claims and defend against improper ones. See R. Keeton, Basic Text on Insurance Law § 7.1(b) (1971). On the other hand, the value of that inquiry for

The Restatement of Contracts, Second, Section 255[4] suggests a rule manifestly suited to the problem before us. Section 255 provides:

> "*Excuse of a Condition to Avoid Forfeiture*
>
> To the extent that the non-occurrence of a condition would cause extreme forfeiture, a court may excuse the condition unless its occurrence was a material part of the agreed exchange."

The two criteria, which must be weighed together, are the extremity of the forfeiture to the obligee (insured) and the materiality of the non-occurrence of the condition to the obligor (insurer). In the instant case, there can be no doubt that the insured's forfeiture of his indemnification against appellant's judgment of $10,000 is an extreme forfeiture.[5] The unanswered question, however, is whether the condition was material to the insurance company at the time it failed to occur.[6] In other words, from the standpoint of the insurance company's ability to assess the extent of its insured's liability, and prepare and defend a lawsuit by appellant against the insured, was the insurance company in substantially the same position seven months after the accident as it would have been in had the insured notified the company "as soon as practicable?" That is the question upon which the court re-

---

the insurer should not be underestimated. Given the propensity of juries to find extenuating circumstances on the flimsiest evidence thereof, and the disinclination of the courts to interfere with their conclusions, the insurer may actually benefit from an inquiry into the damage that was done to its case by the insured's essentially inexcusable tardiness. At least, the jury will know that in raising the condition in defense, the insurer was not merely seizing on a technicality to avoid its contractual obligation.

4. Tentative Draft #7 (1972).

5. Since this is a subrogation claim, it is the loss to the insured, not his victim, which is relevant.

6. Restatement of Contracts, Second, §§255, Comment a, and 266(c).

fused to instruct the jury at the trial below, and that is why we must remand for a new trial, which should be limited solely to this question of materiality.

The application of broad terms like "material" and "extreme forfeiture" to individual circumstances is not an easy task. As Professor Murray has noted: "The new Restatement analysis is a manifestation of the strong abhorrence of forfeitures and suggests a desirable result. However, the difficulties in determining whether the non-occurrence of the condition is 'relatively unimportant' to the obligor and whether the forfeiture is 'extreme' should not be underestimated."[7] Nevertheless, the section does provide a structure for expression of the law's policy against forfeiture,[8] which is all the stronger when it occurs in the context of insurance contracts,[9] while providing a basis for interstate uniformity in interpreting reasonable notice provisions in insurance contracts.

The burden of proving the elements necessary to excuse the non-occurrence of a condition precedent under Section 255 logically falls upon the party seeking to avoid the impact of the condition's non-occurrence. Although Section 255 is susceptible to the interpretation that the insured need only show extreme forfeiture so that the court may "excuse the condition unless [the insurance company shows that] its occurrence was a material part of the agreed exchange," I agree with the majority that placing this burden of proof upon the company would be inappropriate. As Professor Keeton has stated, prompt notice provisions may operate not only in favor of insurance companies, but also in favor of the insured indi-

___

7.  Murray on Contracts, § 168 at p. 331 (1974).

8.  See also Restatement of Contracts, Second, § 266 (Tent. Draft #8, 1973).

9.  Restatement of Contracts, Second, § 255, Comment b suggests that "[t]he character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied."

vidually and the public at large.[10] Since delay in presentation of a claim may substantially enhance the possibility that fraud has occurred, or that the insurance company may lose on a claim when timely discovery would have produced a different result, the claimant under the policy should demonstrate that his dereliction had no such effect on the company's position in his case.[11]

Finally, the result reached herein is consistent with the clear trend in the law which is toward excusing conditions of timely notice where the evidence establishes that timely notice would not have significantly enhanced the position of the insurer. See, e.g., *Pickering v. American Employers Ins. Co.*, 282 A.2d 584 (R.I. 1971) ; *State Farm Mut. Auto Ins. Co. v. Murnion*, 439 F.2d 945 (9th Cir. 1971) ; *Cooper v. Government Employees Ins. Co.*, 237 A.2d 870 (N.J. 1968).; *Keith v. Lutzweit*, 153 N.E.2d 695 (1957). The result also comports with the ever-strengthening public policy that innocent victims of automobile accidents should not go uncompensated unless strong countervailing reasons exist therefor. See *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389 (1968) ; *Nationwide Mut. Ins. Co. v. Ealy*, 221 Pa. Superior Ct. 138 (1972). See also The No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§1009.101 et seq. (Supp. 1975).

I, therefore, would reverse the judgment non obstante veredicto and remand the case for a new trial limited solely to the question of the materiality to the insurer of the insured's failure to notify the insurer as soon as practicable.

HOFFMAN and SPAETH, JJ., join in this concurring opinion.

---

10. R. Keeton, Basic Text on Insurance Law § 7.2(a) (1971).

11. *Id.* at §7.1(b), p. 442. See also *United Services Auto. Ass'n. Appeal*, 227 Pa. Superior Ct. 508 (1974).