[No. 26995. Department One. July 21, 1938.]

ANDREW HILLIARD et al., *Appellants*, v. UNITED PACIFIC CASUALTY INSURANCE COMPANY, *Respondent*.[1]

W. H. Abel, O. M. Nelson, and A. Emerson Cross, for appellants.

Robert E. Evans and John P. O'Connor, for respondent.

STEINERT, C. J.—Plaintiffs brought this suit on a policy of liability insurance seeking reimbursement on account of payment by them of a judgment which had

[1]Reported in 81 P. (2d) 513.

been obtained against them in a prior action by persons claiming damages resulting from an automobile collision. In the present action, the court, after making its findings and drawing its conclusions, entered judgment adverse to plaintiffs, from which they have appealed.

The policy upon which this action is based is a standard form of liability insurance issued by respondent on a Ford truck owned by appellants and used by them in their glass and paint business in the city of Aberdeen. We quote the two provisions of the policy material to this controversy:

■ "EXCLUSIONS (0) This policy shall not cover in respect of any automobiles: . . .

"(5) . . . . while being rented under contract or leased, unless permission is granted therefor and so indicated in Item No. 8 of the Schedule of Insurance."

■ "THIS AGREEMENT IS SUBJECT TO THE FOLLOWING CONDITIONS:

"NOTICE AND SETTLEMENT

"(C) . . . The Assured must cooperate fully with the Company in immediately disclosing all the facts known to him about the happening of every accident, the making of every claim and the filing of every suit, and also shall render his aid in the securing of evidence, his personal attendance at a trial or hearing, and attendance of witnesses, and in the prosecution of an appeal in the event one is taken."

Item No. 8 of the "EXCLUSIONS" clause, above referred to, specified that the truck was to be used for "commercial purposes," but it contained no provision granting permission to rent or lease the truck; nor was such permission ever in anywise given by respondent.

On December 14, 1933, which was eleven days after the issuance of the policy, the truck was used to haul a load of Christmas trees from the vicinity of Matlock to Aberdeen. These trees, or at any rate most of them, belonged to one S. M. DeLosh, who operated a service

station near appellants' place of business. DeLosh had planned to sell the trees at his station. As will appear later, the nature of the agreement between appellants and DeLosh with reference to the use of the truck is determinative of this lawsuit, and the statements made to respondent by the contracting parties regarding the agreement have an important bearing on this controversy.

The undisputed facts are that, on the trip, one E. C. Copeland, a regular employee of appellants, drove the truck, accompanied by DeLosh. In the course of the return trip, they stopped, partially on the highway, to change a tire. While the two men were thus engaged, an automobile driven by Mrs. Ruth Kelsey approached from the rear and ran into the truck. As a consequence of the collision, an action for damages was instituted five days later by the Kelseys against the Hilliards, Copeland, and DeLosh.

On receipt of notification of the accident, respondent insurance company sent its adjuster to Aberdeen to investigate the facts. The adjuster first visited DeLosh, who made a statement which the adjuster reduced to writing and which DeLosh then signed. Regarding the nature of the agreement with reference to the use of the truck, the statement of DeLosh reads as follows:

"A few days before Christmas I decided to get some Christmas trees and sell them at my service station. I didn't have any truck so went to Andy Hilliard of the Hilliard Glass & Paint Co. and made arrangements with him to hire his 1928 Ford truck to go up around Matlock to get the trees. I told him I would pay him $10 for using his truck to make the trip. I asked Mr. Hilliard if he would send Ed Copeland along with me to drive the truck and help with the loading of the trees. Hilliard said he would let Copeland go with me. Copeland and myself left Aberdeen around twelve noon on December 14th, 1933. . . .

"I paid Mr. Hilliard the $10 for the use of the truck. . . ."

The investigator then called on appellants and discussed the matter with them. Mr. Hilliard, on being told by the adjuster of the statement made by DeLosh, said that it was correct. Hilliard then made a detailed statement, which the adjuster reduced to writing and which Hilliard thereupon signed. His statement reads as follows:

"On Dec. 13th Stanley DeLosh came to me and wanted to know if I would let him take my truck and wanted to know if I would let Ed Copeland go with him to get some Christmas trees up at Matlock. I said I wouldn't let him have the truck unless one of my own men went along to drive it. DeLosh offered to pay me $10 for the use of the truck. I said he could take it & told Ed Copeland to go with him. I pay Copeland a weekly salary. DeLosh has asked for the loan of the truck a few times before this and I let him have it sending a driver along. Prior to Dec. 14th DeLosh never paid anything for the use of the truck. I loaned it to him for business reasons.

"When he borrowed the truck on Dec. 14th I had no interest in selling the load of trees he went after."

On January 6, 1934, respondent's attorneys wrote to Hilliard advising him that they had received a copy of the Kelsey complaint and further stating:

"We are instructed by the United Pacific Casualty Insurance Company to defend this case for you under the reservation of rights contained in the policy. The policy provides that if the truck is loaned or rented to another party, the insurance company is not liable.

"Mr. Copeland was driving the car and he might be personally liable, but there will be no liability against you as we see the law.

"The insurance company will defend the case without cost to you but in the event judgment is rendered against you, the company reserves its right to contest

payment under the policy because under the circumstances of the case the insurance does not cover."

Hilliard received this letter, but did not reply to it.

Shortly thereafter, respondent's attorneys put in an answer for the Hilliards, setting forth as an affirmative defense that the truck had been rented to DeLosh, who had it in his possession and under his absolute control for his exclusive benefit. The answer was based on the information which previously had been given to respondent; it was verified by one of respondent's attorneys.

At the trial of the Kelsey case, Hilliard, despite his former statement, testified emphatically that the truck had not been loaned or rented to DeLosh, but that he had contracted to haul the trees for DeLosh and that a part of the trees were for his own use. DeLosh testified to the same effect. That case was tried before the same judge that tried the present case, both trials being without a jury. The Kelsey case resulted in a judgment holding the Hilliards and Copeland liable in the sum of $750 and costs, but dismissing DeLosh.

Appellants Hilliard, having paid the judgment against them, brought this action against respondent on the insurance policy. Respondent's defense to the present suit is that it is not liable under the terms of the policy because appellants breached the cooperation clause thereof in that they failed to disclose the true facts known to them concerning the accident; that, because of the statement given to it by Hilliard, it was led to believe that it had an absolute defense to the Kelsey action; that, although respondent asserted that defense in that action, the defense became untenable because of Hilliard's contrary testimony at the trial; and that, further, by reason of Hilliard's previous statement, respondent was deprived of any opportunity to adjust or compromise that action before trial.

In their reply, appellants admitted Hilliard's signing of the statement and admitted receipt of the notice in which respondent claimed a reservation of rights in the defense of the Kelsey action, but denied that the contents of Hilliard's statement, as revealed to them by respondent's adjuster, were as set out in the subsequent letter sent by respondent's attorneys.

In support of their reply, appellants produced testimony purporting to prove that both Hilliard and DeLosh misunderstood the meaning of the statements which they had signed and that they had been induced to sign them through misrepresentations by the adjuster as to their legal effect. This was emphatically denied by the adjuster.

All of the witnesses were interested persons, being either parties to the action or else employees or members of the family of a party. In determining that issue, the credibility of the witnesses was an important element. The trial court saw the witnesses, observed their demeanor, and considered the possible interest that they may have had in the outcome of the action; the court also had a recollection of what had transpired at the former trial.

It was for the court to consider whether Hilliard and DeLosh misunderstood the statements that they had given to respondent or whether they had intended to represent the situation as they had expressed it in those statements; also, whether or not, for reasons of their own, they had knowingly changed their stories at the Kelsey trial and thus deprived respondent of the defense on the supposed existence of which it had relied. The court also had appellants' admission that, although they had received respondent's letter disclaiming liability under the facts as given in the original statement, they never answered that letter. Furthermore, there was no evidence that respondent was

ever advised, prior to the trial of the Kelsey action, that the agreement between appellants and DeLosh was other than as originally represented to it.

Upon this evidence, together with the inferences that reasonably could be drawn therefrom, one way or the other, the court made a positive finding, in the present case, that Hilliard's "testimony was wholly at variance with his report and signed statement of the facts." The issue of fact having been determined adversely to appellants by the court, which was the trier of the facts, and there being evidence to support the findings, we are concluded thereby.

■ The question then remains whether or not the misstatement of fact, as found by the court, regarding the agreement between appellants and DeLosh constituted a breach of the cooperation clause.

"Cooperate," as used in policies such as this, does not mean that the assured is to assist the insurer in presenting a sham defense, but it does mean that the assured must give the insurer full, fair, and frank disclosure of all information reasonably requested by the insurer to enable it to determine whether there is a genuine defense. *Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443; *Buckner v. Buckner*, 207 Wis. 303, 241 N. W. 342; *Allegretto v. Oregon Automobile Ins. Co.*, 140 Ore. 538, 13 P. (2d) 647; *Shafer v. Utica Mut. Ins. Co.*, 248 App. Div. 279, 289 N. Y. Supp. 577; Blashfield Cyclopedia of Automobile Law, 413, § 4059.

As stated in *Koontz v. General Casualty Co.*, 162 Wash. 77, 81, 297 Pac. 1081:

"Conditions of this sort in an insurance policy are not without reason in their support. They are intended to prevent collusion between the person assured and the party claimed to have suffered damages at the hands of the assured, and, to prevent the possibility of such an occurrence, the insurer may guard against it in its

contract with the assured, and hold the assured to a reasonably strict compliance with the terms of the contract."

In *Eakle v. Hayes*, 185 Wash. 520, 525, 55 P. (2d) 1072, we quoted the above paragraph from the *Koontz* case and then said:

"Although the facts in that case are stronger than those here, in that there actual collusion was shown to have existed, while here there was only failure to co-operate in the trial of the case, the principles underlying the validity of these respective conditions in the contract are the same. The difference between conniving to effectuate a judgment against the insurer and failing or refusing to render proper assistance to the insurer in the defense of an action is merely a difference in the method by which the effect is accomplished. Both have the tendency to produce the same result."

The authorities above cited hold that, when the condition is broken, the policy is at an end, if the insurer so elects.

The facts as found by the court and the law as declared on the subject compel us to hold that appellants breached the cooperation clause and therefore cannot recover upon the policy.

The judgment is affirmed.

SIMPSON, MAIN, HOLCOMB, and GERAGHTY, JJ., concur.