[No. 30405. Department Two. March 4, 1948.]

JOHN R. BRUCKART, JR., et al., Appellants, v. FLORENCE L. COOK, Respondent.[1]

[1]Reported in 190 P. (2d) 725.

*R. F. Dotsch,* for appellants.

*Pebbles & Kuykendall,* for respondent.

BEALS, J.—During the month of April, 1946, the plaintiffs, John R. Bruckart, Jr., and Marian E. Bruckart, his wife, entered into negotiations with the defendant, Florence L. Cook, concerning the purchase by plaintiffs from defendant of a tract of land in Thurston county, Washington, described as:

"Lot three (3) and the east 20 feet of Lot ten (10) in Block nine (9) of Galliher's Addition to Olympia, according to the plat thereof recorded in Volume 1 of Plats, page 73, records of Thurston County, Washington."

The defendant resided in Douglas county, and plaintiffs' negotiations were conducted through a real-estate agent in Olympia.

April 22, 1946, the parties signed a contract, in writing, providing for the sale of the property by defendant to plaintiffs for the sum of three thousand dollars, one thousand dollars to be paid in cash, the balance to be payable at the rate of thirty-five dollars or more a month, including interest, until the balance of the purchase price should be paid in full, plaintiffs agreeing to pay all taxes or assessments thereafter levied, and to keep the buildings on the property insured in the sum of twenty-five hundred dollars for defendant's protection. Plaintiffs made a down payment of one hundred dollars, subject to examination of title.

The plat of Galliher's Addition to Olympia was recorded in the office of the auditor of Thurston county, Washington Territory, December 13, 1871. The blocks consisted of twelve lots, each lot having a fifty-foot frontage on the street and being one hundred feet in depth. Block 9 is bounded on the north by Milas avenue, on the east by north Lilly street, on the south by Etheridge avenue, and on the west by north Berry street. The streets are described as being sixty feet wide. The lots face east and west, lots 1 to 6 in each block facing east, and lots 7 to 12 facing west. Each block is bisected by an alley, running north and south, described on the plat as fifteen feet in width.

The property which plaintiffs agreed to purchase from defendant consisted of lot 3, facing east, fifty feet frontage on north Lilly street by one hundred feet in depth, and the east twenty feet of lot 10, the side boundaries of that lot coinciding with the north and south boundary lines of lot 3, produced westerly across the alley. There was a house upon the property, and a separate garage.

An abstract was furnished to plaintiffs by defendant, the abstract containing a blueprint of the plat, showing the lots, streets, and alleys, all plainly indicated. The abstract being unsatisfactory to plaintiffs, they procured a policy of title insurance, whereby plaintiffs' title to the property was insured in their favor for three thousand dollars. This policy of title insurance also contained a copy of the plat, similar to that contained in the abstract, plainly indicating the lots, streets, and alleys.

Plaintiffs, being satisfied with the title upon delivery of the policy of title insurance, paid to defendant the balance of the one-thousand-dollar down payment, and took possession of the property, upon which was situated the house and the garage referred to above. The dwelling was in poor condition, and plaintiffs repaired and renovated the same at the expenditure of considerable labor and money.

After several months, during which plaintiffs paid the monthly installments due under the contract, they decided to sell the property and found a purchaser, ready, able, and willing to purchase the same at an advance over the price

they had agreed to pay defendant. The prospective purchaser, upon investigating the title and examining the property, discovered the fact, which was at all times perfectly obvious, that approximately half of the house was standing upon the east twenty feet of lot 10; that a large portion thereof was standing upon the platted alley, and that only a very small portion thereof rested upon the westerly portion of lot 3; that about two thirds of the garage was standing upon the southwesterly corner of lot 3, projecting a slight distance over the northwesterly corner of lot 4, the remainder thereof standing upon the platted alley.

The prospective purchaser then refused to purchase the property, and plaintiffs refused to make further payments due, pursuant to the contract, and instituted this action against defendant, alleging their agreement to purchase the property from defendant; that they took possession, pursuant to the contract, and made the payments above described; that defendant had represented that the improvements, consisting of the dwelling and garage, were situated upon the property covered by the contract; that plaintiffs had expended money, labor, and material in renovating the house and had disbursed other sums for fire insurance, title insurance, and so forth, in reliance upon their belief that the dwelling was situated upon the property, when, in fact, the dwelling and part of the garage were standing upon the platted alley; that plaintiffs had joined with other property owners, requesting the commissioners of the city of Olympia to vacate the alley, and that the request had been refused; that defendant had refused to pay the very considerable expense required to move the house from the alley to lot 3; further alleging that plaintiffs were willing to do equity in the premises, and praying for cancellation of the real-estate contract, for judgment against defendant for the sum of $1,280 paid on account of the purchase price of the property, for the further sum of $386.70 on account of improvements and repairs made by plaintiffs on the property, and for such further relief as might appear equitable.

The defendant filed her answer and cross-complaint, admitting the execution of the contract between the parties,

8

denying other allegations of the complaint, and, by way of a cross-complaint, praying for forfeiture of the contract.

The action was called for trial, and, at the close of plaintiffs' case, defendant moved to dismiss plaintiffs' complaint, contending that, under the complaint and the evidence introduced by plaintiffs in support thereof, plaintiffs were entitled to no relief. After argument, the court stated that the motion would be granted and plaintiffs' action dismissed.

Defendant was then called as a witness on her own behalf and testified in support of her cross-complaint.

In due time, the trial court entered findings of fact and conclusions of law in defendant's favor, based upon the evidence she introduced, followed by a decree dismissing plaintiffs' action with prejudice, quieting defendant's title to the property as against plaintiffs, forfeiting to defendant all sums paid by plaintiffs, pursuant to the contract referred to, as liquidated damages, granting, however, to the plaintiffs an opportunity to reinstate the contract by making certain payments to defendant within a specified time.

From the decree, plaintiffs have appealed.

Respondent, in her brief, moves to strike appellants' brief and dismiss their appeal, arguing that appellants' brief contains no assignment of error. It is true that appellants' brief contains no formal assignment of error, but, from appellants' statement in their brief of the question involved, it appears that they present only the question that, upon the evidence, the court erred in entering a decree in favor of respondent, and in dismissing appellants' action. Following the opinion of this court in *In re Whittier's Estate,* 26 Wn. (2d) 833, 176 P. (2d) 281, respondent's motion to strike appellants' brief is denied.

We again call attention to the fact that the brief of an appellant should contain a definite statement of assignments of error, as provided by Rule of Supreme Court 21, 18 Wn. (2d) 21-a.

In their brief, appellants directly state that they make no contention that either respondent or anyone representing her, or on her behalf, made any false or fraudulent representation concerning the property. The record contains no

evidence that respondent ever saw the property or that she knew or had ever heard that the dwelling in question stood, in part, upon the alley.

The contract between the parties provided that, when appellants had made the payments called for by the contract, they should receive a deed conveying the premises in fee simple, with the usual covenants of warranty, excepting from these covenants taxes or assessments becoming liens after the date of the contract, and all liens and encumbrances created by appellants or their assigns.

Appellants rely solely upon the contract, arguing that a vendor of real estate is presumed to know his own title and cannot shift to a purchaser the burden of ascertaining the existence of such a state of facts as is here presented, and that respondent has breached her covenant to convey with warranty of title.

It appears that appellants petitioned for the vacation of the alley, supported by the signatures of other property owners interested, and that the commissioners of the city of Olympia denied their petition.

In support of their complaint, appellants tendered into court a deed of the property, conveying the same to respondent, to be delivered in case judgment was rendered in appellants' favor, as demanded in their complaint.

From the evidence, it appears that appellants, who had been residing near Olympia, decided to move to that city and purchase a home. Through a real-estate agent, they were referred to respondent's property, examined it, and, finding it satisfactory, entered into the contract here in question. It nowhere appears, from the evidence, that any representations whatever were made to them by anyone concerning the property, save that respondent held herself out as the owner. The contract correctly describes exactly the real estate which respondent owned.

Appellants were furnished an abstract of title, containing a plat of the property which clearly shows that lot 3 and the easterly portion of lot 10, in block 9 of Galliher's Addition, were separated by an alley fifteen feet in width. The plat also discloses that lot 3 was fifty feet wide, fronting on

north Lilly street, and one hundred feet in depth. Of course, the description of the east twenty feet of lot 10 is clear. The position of the dwelling upon the property is apparent to even a casual observer, the easterly margin of the house being well over ninety feet west of the easterly boundary of the lot.

In addition to the abstract, appellants themselves procured a policy of title insurance which contained a plat of Galliher's Addition, and which plat disclosed the existence of the alley running north and south through block 9, and, in every particular, coincided with the plat contained in the abstract.

The contract between the parties described the real estate only, but, as it was provided therein that the buildings on the property should be insured against loss by fire in the sum of twenty-five hundred dollars, the contract recognized the fact that there were improvements upon the property.

Appellants argue that respondent cannot convey the property, according to the terms of the contract, by warranty deed, because the dwelling stands, in part, upon the public alley which bisects the block. Appellants do not argue that respondent does not own the dwelling or that, by a deed from respondent, they would not receive title thereto.

Appellants called as a witness a contractor, who testified that he had examined the premises, and testified concerning an estimate of the cost of moving the house from the alley to respondent's property. Appellants introduced no evidence whatever as to any claim, on the part of the city of Olympia, that the city owned any portion of the house because it had been constructed in part, upon the alley. It would seem that the city would have no authority to do anything more than to require that the obstruction of the alley be abated. The situation here presented differs from the erection of a building, wholly or in part, upon land in private ownership, not owned by the party who erected the building.

In support of their contention, appellants cite the case of *Wingard v. Copeland,* 64 Wash. 214, 116 Pac. 670, in which it was held that a contract for the sale of real estate, to which a fee-simple title was to be conveyed, free and clear

of encumbrances, was breached by the existence of an easement, pursuant to which a pipe line for the conveyance of water across the land, was in existence. The existence of the easement clearly prevented the conveyance of a title in fee simple. Different questions are here presented.

Appellants also rely upon the case of *Davis v. Lee,* 52 Wash. 330, 100 Pac. 752, 132 Am. St. 973, in which it appeared that the defendant had, by a contract in writing, agreed to sell and convey, by quitclaim deed, certain real estate described in the contract. The holder of the contract, having paid the purchase price of the land, and been subjected to an action in ejectment, in which he unsuccessfully sought to defend the title, sued for recovery of the purchase price. This court held that, having contracted to sell a specified tract of land, even though the conveyance was to be by a quitclaim deed, it having later transpired that the grantor did not own the land, the contract purchaser was entitled to recover the money which he had paid. The case at bar is controlled by other principles of law than those upon which the case cited was based.

In the case of *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584, it appeared that the defendants had, by warranty deed, conveyed to the plaintiff a lot in the city of Seattle, upon which was located a two-story brick building. It later transpired that the building stood, in part, upon a public street, and the purchaser was put to expense to remove that portion of the building. From a judgment in favor of the plaintiff, who had sued for damages, the defendants appealed. This court affirmed the judgment, upon the ground that representations had been made by defendants' agent to the effect that the building stood upon the lot conveyed. In the course of the opinion, the court said:

"Since we have concluded that the respondents may recover on the ground of misrepresentation if the building in fact extended into the street, it is unnecessary to discuss the question whether a recovery will lie for a breach of the covenant of warranty. An examination will show that the authorities are not uniform on the question, and we prefer to pass it until the necessity for a decision may arise."

As stated by the court in the above quotation, the authorities are in decided conflict as to whether or not a recovery will lie for a breach of warranty if a building, standing upon real estate conveyed by warranty deed, in fact stands, in part, upon land not conveyed.

The following authorities are pertinent to the question here presented:

In the case of *Kelly v. West Seattle Land & Imp. Co.,* 4 Wash. 194, 29 Pac. 1054, it was held that a purchaser of lots described in the deed as part of a certain plat which was of record, was bound by the terms and conditions of the plat, regardless of the fact that she was unaware of certain provisions contained in the dedication of the plat.

In the case of *Conta v. Corgiat,* 74 Wash. 28, 132 Pac. 746, this court considered appeals in two equitable actions growing out of the same transaction and depending upon the same state of facts. In the first action, the plaintiffs Conta (appellants before this court) sued for rescission of a purchase of real estate from the defendants, basing their claim upon the grounds of fraud and misrepresentation. In the second action, the defendants Corgiat sought foreclosure of a mortgage on the property conveyed. While there was evidence that the defendants had represented that the lot sold was one hundred twenty feet long, it was, in fact, only one hundred five feet in length. Conta had examined the property, and the trial court, being of the opinion that there was no excuse for his not knowing the true dimensions of the lot, and that slight care or prudence on his part would have discovered the true situation, denied rescission and foreclosed the Corgiat mortgage against the property.

This court, speaking through Ellis, J., affirmed the decision of the trial court, holding that the case presented no controlling equities in appellants' favor.

In the case at bar, appellants do not contend that respondent, or anyone on her behalf, made any representations whatever to them concerning the property or position of the house in connection with the boundaries of the tracts which respondent agreed to convey. Appellants, desiring to buy a home in Olympia, discovered that respondent's property

was for sale and negotiated for its purchase. Apparently, the house was then vacant, and appellants had every opportunity to make a complete investigation concerning the property. They took their own time in deciding to pay the price asked by respondent for the property.

█ The great majority of actions for rescission of contracts for the sale of real estate are based upon alleged misrepresentations. Frequently, even when misrepresentations were made, the courts have denied relief to one seeking a rescission, if he made his own investigation or if there was accorded to him a sufficient opportunity of examining into the facts. It is also the law that, when a prospective purchaser makes such an investigation as he deems necessary, and is not hindered or prevented from doing so by any act of the other party, the purchaser should be held to have knowledge of everything that a proper investigation would disclose. 3 Pomeroy's Equity Jurisprudence (5th ed.) 523, § 895a.

In 8 Thompson on Real Property (Perm. ed.) 581, § 4609, the writer calls attention to the fact that it has been held

". . . that equity will refuse a purchaser relief if the defects of which he complains might with reasonable diligence have been discovered by him prior to the execution of the contract."

In 1 Jones Cyclopedia of Real Property Law (Perm. ed.) 364, § 258, is found the following text:

"There are many instances in which appurtenances do not *a fortiori* pass with a grant, and consequently are not to be considered as falling within the purview of a contract to sell realty. For examples: The presumption that an appurtenance passes with the sale of realty does not obtain where the appurtenance has been erected by one person on the land of another."

In 55 Am. Jur. 710, § 258, the text states that, in general, covenants to convey free of all encumbrances are held not to refer to visible, physical burdens upon the land, permanent in character, known to the vendee. The rule also applies to matters which a vendee should have known, or ascertained by a reasonable investigation.

In the case of *Burke v. Nichols*, 2 Keyes (N. Y.) 670, an action to foreclose a purchase-money mortgage, in which the defendants claimed damages because a dwelling house upon the premises conveyed projected beyond the bounds of those premises over and upon an adjoining lot, and the defendants had been evicted from the portion of the house which stood beyond the boundary of the land conveyed, the court of appeals of New York held that, while a conveyance of land passes title to everything which is attached to the land, the fact that a building upon the land was, in part, situated upon property not conveyed, did not entitle the grantee to relief against the mortgage. No question concerning representations made at the time of sale was referred to by the court.

While the contract of sale here in question bears date April 22, 1946, appellant Marian E. Bruckart testified that the contract did not become effective until some date after May 15th following, appellants having delayed making the full payment called for by the contract, pending examination of the abstract of title and the issuance of a policy of title insurance.

Mrs. Bruckart testified that she and her husband had been residing at Vail, near Olympia, and desired to move to the latter city, and that they agreed to purchase the property in question through a real-estate agent in Olympia, who apparently assisted them in finding a satisfactory location. The property was then vacant, and the witness testified that the house was dirty and in bad repair. The ground floor of the house consists of two bedrooms, a large living room, a dining room, a kitchen, and a bath. There are porches on the front and back of the house.

Mrs. Bruckart testified that she and her husband looked over the abstract, prior to completing the purchase, and that she noticed that the abstract contained a plat of the property. The witness testified that the plat showed that there was an alley bisecting the block, and that an examination of the plat disclosed that the alley was between lot 3 and the portion of lot 10 which appellants proposed to purchase. While testifying that she had seen the plat, the witness stated that she had not paid any particular attention to it, stating

" . . . that is not unusual to have an alley on your property."

On further cross-examination, the witness stated that, prior to signing the contract, she had visited the house several times, probably on as many as four occasions. She stated that she liked the house, and that it was " . . . the sort of house I wanted for not too much money. I liked it right away and I wanted it right away; that is as far as looking it over went."

She testified that she knew that lot 3 extended one hundred feet west from north Lilly street, and that the house was located quite a distance back from the street. When her attention was called to the fact that the lot was one hundred feet in depth, she admitted that the house stands almost one hundred feet back from the street. Of course, the width of the east twenty feet of lot 10 is explained by the description.

Appellant John R. Bruckart testified that he had seen the abstract of title to the property, prior to purchasing the property, and that he had turned it over to an attorney for examination; that he had looked at the plat in the abstract and noticed that the plat showed an alley between lots 3 and 10.

It is a matter of common knowledge that most plats, containing lots fronting upon two parallel streets, show dedicated alleys bisecting the blocks, so that convenient access may be had to the back portions of the lots for deliveries of merchandise, removal of garbage, and so forth. This would clearly be true in connection with the situation in the case at bar. It would seem that the position of the house upon the land would suggest to anyone that, if there were an alley through the block, it was probable that the house stood, in part, upon such alley. The fact that appellants had in their possession, and say that they looked at, a plat of the addition, renders it difficult to understand how they could have avoided having their attention called to the apparent situation of the house.

Appellants introduced in evidence a plat of block 9, prepared by the city engineer of Olympia, showing the position

of the house and garage upon the land which appellants agreed to purchase. The plat shows two houses upon the lots fronting on north Lilly street, immediately to the north of lot 3, these houses being constructed at the usual distance from the west margin of the street, while the house with which we are here concerned stands far back from the street.

It is significant that the person to whom appellants proposed to sell the land had no difficulty in discovering that the house rested, in part, upon the alley.

As above stated, it seems clear that respondent owns the house here in question, and that a deed from her to appellants, or their successors in interest, will convey title to the house. Of course, the owner of the property may, at any time, be required to move the house from its present position on the alley. This is not an action at law for breach of a warranty, but, as appellants expressly state in their complaint, is an equitable action for a rescission of a contract, and resulting damages. Cases concerning easements, such as rights of way across real estate, present different questions from those inhering in the case at bar.

As stated by Judge Fullerton, in the case of *Starwich v. Ernst, supra,* the authorities are in considerable conflict as to questions concerning liability for an alleged breach of a covenant of warranty, presented in cases concerning projections of buildings upon the area of streets or upon property not owned by the warrantor. The evidence in the case at bar presents questions which require the application of equitable, as well as legal, rules of law.

We are of the opinion that, under all the evidence before us, this being an equitable action for a rescission (*Hopper v. Williams,* 27 Wn. (2d) 579, 179 P. (2d) 283), appellants were not entitled to the relief which they sought under their claim that there was a breach of the contract, which provided for conveyance of the property by a deed, with the usual covenants of warranty.

The trial court correctly entered judgment dismissing appellants' action with prejudice.

As above stated, the trial court, after quieting title to the property in question in respondent, and forfeiting to

respondent all sums paid under the contract by appellants, as liquidated damages for breach of the contract, further directed that if, on or before August 10, 1947, appellants should pay to respondent her taxable costs in this action, plus the entire amount then due and owing on the contract (naming the amount), the contract between the parties would be reinstated.

Upon the record before us, the cause being in equity, the trial court properly allowed appellants to reinstate the contract upon the terms set forth in the judgment.

The judgment appealed from is affirmed.

We further order that if, within thirty days after the receipt of the remittitur herein in the office of the clerk of the superior court for Thurston county, appellants pay into the registry of the superior court, for respondent's benefit, all sums necessary to place their contract with respondent in good standing up to the date of such payment, together with respondent's costs in the superior court and her costs as taxed in this court, appellants' rights in, and pursuant to, the real-estate contract between the parties, which is the subject matter of this action, shall thereupon be reinstated as of the date of such payment.

If, however, appellants do not avail themselves of this privilege within the period above limited, the judgment quieting respondent's title to the premises, and forfeiting all payments which appellants have made to respondent, will stand affirmed.

MALLERY, C. J., STEINERT, SCHWELLENBACH, and JEFFERS, JJ., concur.