[No. 1516-1. Division One. January 14, 1974.]

KENNETH BURR et al., *Appellants*, v. ROBERT B. LANE et al., *Defendants*, CONTINENTAL CASUALTY COMPANY, *Respondent.*

662

· *Donald W. Marken,* for appellants.

*Lane, Powell, Moss & Miller* and *Robert L. Israel,* for respondent.

HOROWITZ, J.—Plaintiff Kenneth Burr, holder of a default judgment against the insured Robert B. Lane for damages sustained in an automobile collision, appeals an order dismissing plaintiff's writ of garnishment against the insurer, Continental Casualty Company, brought to collect the default judgment.

The controlling question presented concerns the injured plaintiff's right to garnishment relief when the insurer claims defenses against the insured on the insurance policy the proceeds of which are sought to be garnished.

A summary of the stipulated facts follows.[1]

'On June 5, 1965, Robert B. Lane brought his Ford car into a repair shop in Lakewood, Washington, for examination and repair. He had purchased the Ford car with an

---

[1] Plaintiff Kenneth Burr is sometimes hereinafter referred to as plaintiff, or injured party. Defendant Robert B. Lane is sometimes hereinafter referred to as Lane, or insured. The evidence does not show whether either plaintiff or defendant was married.

NSF check. On or about June 8, the seller of the car appeared at the repair shop stating the car had been so purchased. He later repossessed the car. When the car was brought in, the shop owner was also an agent for Best Rent-A-Car, Inc., a car rental company. On June 5, 1965, Lane rented and took possession of a Dodge car, signing a Best Rent-A-Car, Inc. rental agreement. The rented car was to be returned to the shop on June 9, 1965, and the car rental fee paid at that time. The rental agreement also provided for liability insurance with Continental Casualty Company for bodily injury and property damage, by which Lane became an insured along with the named insured, Best Rent-A-Car, Inc. Premiums for the policy to be paid to the insurer were derived from car rental receipts.

On June 11, 1965, Lane, while operating the Dodge car, collided with a car operated by plaintiff. The Dodge car was damaged in an unstated amount. It was never returned to the Lakewood location called for in the rental agreement. On June 19, 1965, the damaged car was discovered parked in the Bellevue lot of another Best Rent-A-Car, Inc. office. Lane never returned to pay and never paid any rental for the car. He gave no notice of the June 11, 1965, accident to the rental company, the repair shop, or to the insurer.

On June 29 and July 27, 1965, plaintiff's attorneys wrote the rental company at its Bellevue office notifying it of the June 11 accident. The rental company forwarded the letters to the insurer, who received them. On July 6, 1965, the insurer wrote plaintiff's attorneys stating the claim referred to in their letter was being investigated. On August 12, 1965, the insurer wrote plaintiff's attorneys as follows:

> We are the insurers of Best Rent-A-Car.
>
> Because Mr. Robert B. Lane failed to make the consideration necessary for the rental of one of our vehicles and obtained the vehicle under questionable circumstances, we are unable to afford coverage to Mr. Lane.
>
> Unless you are able to prove negligence on the part of Best Rent-A-Car, we are unable to give any consideration to your client's claim.

Plaintiff on December 9, 1966, filed a summons and complaint naming Kenneth Burr and Jane Doe Burr as plaintiffs, Robert B. Lane and Jane Doe Lane as defendants, and Best Rent-A-Car, Inc. as an additional defendant. Summons and complaint were served on the additional defendant on December 22, 1966, but no service was made on the named defendants. On January 6, 1967, a law firm entered an appearance on behalf of the named defendants, Robert B. Lane and Jane Doe Lane and Best Rent-A-Car, Inc. It is reasonably inferable from the stipulated facts the insurer knew of the action brought and that the attorneys were representing it as well as the parties for whom they expressly appeared. However, neither the appearing attorneys nor the rental company nor the insurer, despite their attempts to locate Lane, learned Lane's whereabouts. They knew he had left the jurisdiction.

On May 15, 1967, pursuant to stipulation, Best Rent-A-Car, Inc. was dismissed from the litigation. The stipulated facts do not state the appearing attorneys withdrew their appearance for named defendants Lane. Plaintiff, but not the insurer or rental company, finally discovered Lane's whereabouts on August 28, 1967, but did not inform the insurer of that discovery. Plaintiff then served Lane with summons and complaint while he was incarcerated in the Marin County jail at San Raphael, California. Lane was then in the military service of the United States. When Lane was served, plaintiff's attorneys left with him an additional copy of the summons and complaint with instructions to forward it to "the insurance company." Neither Best Rent-A-Car, Inc. nor Continental Casualty Company received the summons and complaint, and neither was notified or contacted by defendant Lane advising it of the fact of service. Following the rental of the car on June 5, 1965, Lane never contacted either the car rental company or the insurer and they had no contact with him.

On December 15, 1967, plaintiff's attorneys, on ex parte motion, secured an order of default against defendant Lane.

On July 12, 1968, plaintiff obtained a judgment in his favor against Lane for $9,507.50. The record does not itemize the damages. Service upon Lane, the motion for and order of default, and the subsequent judgment were taken by plaintiff's attorneys

> without notice to Best Rent a Car, Inc., Continental Casualty Co., or their attorneys . . . The first notice of these events was communicated by plaintiff's attorneys to Continental Casualty Co. by letter dated October 24, 1968 . . .

Subsequently, the insurer refused to pay the judgment. On October 8, 1970, plaintiff's attorneys sued out a writ of garnishment. The insurer answered denying liability. Plaintiff controverted the answer. After trial below, the writ of garnishment was dismissed. This appeal and cross-appeal followed.

## PLAINTIFF KENNETH BURR'S APPEAL

■ At the outset, the insurer contends plaintiff's assignments of error are not reviewable because of his failure to comply with CAROA 42(g)(1)(iii) and CAROA 43. The only assignment of error made reads: "Error is assigned to the trial court's judgment dismissing appellant's writ of garnishment." Such a general assignment is but an invitation to search the record for specific errors on which the general assignment rests, such as error in findings or conclusions, or both. Standing alone, the assignment would be insufficient under the rationale of *Pederson v. Pederson,* 41 Wn.2d 368, 249 P.2d 385 (1952). *See Koster v. Wingard,* 50 Wn.2d 855, 314 P.2d 928 (1957). However, we are able to pass on the contentions raised based on the assignment of error in its total form. The assignment's further statement in effect complains of the conclusions of law. The statement reads:

> The issues raised by this appeal in the order that they will be argued in this brief are as follows:
> A. Whether defendant Lane had converted the rental vehicle to his own use and was not an insured under respondent's policy of insurance at the time of the accident.

B. Whether the policy condition precedent as to giving notice of accident was satisfied by appellant's attorney.

C. Whether respondent waived any breach of policy condition precedent as to notice of accident by denying coverage on other grounds and waived subsequent compliance with policy conditions precedent as to forwarding suit papers and assisting and cooperating in the defense of the action.

We are able to review the error assigned under the rationale of *Bruckart v. Cook*, 30 Wn.2d 4, 190 P.2d 725 (1948); *In re Estate of Whittier*, 26 Wn.2d 833, 176 P.2d 281 (1947); *Moore v. Spokane*, 88 Wash. 203, 152 P. 999 (1915).

■ Plaintiff disagrees with the court's conclusion that defendant Robert B. Lane

was not an insured under the policy of insurance maintained by garnishee defendant at the time of the accident, having by his actions, without lawful justification, deprived the lawful owner (Best Rent a Car) of the possession of its property (rental vehicle), thereby converting it to his own use.

Conclusion of law No. 3. Plaintiff relies on *Guaranty Nat'l Ins. Co. v. Mihalovich*, 72 Wn.2d 704, 435 P.2d 648 (1967). *Mihalovich* held the mere retention of a rented car for about a month after the period of bailment was insufficient to establish a conversion. The court stated intent is not necessary to establish a conversion, but "it is still necessary, in order to transform a bailment into a conversion, that the bailee has, in some way, decisively indicated a repudiation of the right of the owner to the car." *Guaranty Nat'l Ins. Co. v. Mihalovich, supra* at 710. *Contrast Stewart v. Davis*, 31 Ark. 518, 25 Am. R. 576 (1876).

The insurance company distinguishes *Mihalovich* on the basis of circumstantial evidence of conversion in the instant case not appearing in *Mihalovich*. Thus, Lane did not pay or return to pay the rental so as to constitute a recognition of the owner's right to the car. He did not return the vehicle at the time and place required and, when he did leave the vehicle, he did so surreptitiously and at a far removed location. Sufficient time elapsed from June 5 to

the return date of June 9 to permit the Ford seller's discovery of the NSF check, raising the possibility of Lane's arrest on a bad check charge. RCW 9.54.050. The seller of the Ford car did discover and complain of the NSF check on or about June 8. Assuming, notwithstanding the circumstances under which Lane obtained the rented car, Lane originally intended to return the car, his possible fear of discovery and arrest could explain his deliberately keeping and retaining possession of the rented car on and after June 9, instead of returning it, and not returning to pay or paying the car rental and the repair bill on the Ford ostensibly left for repairs. It would also help explain why Lane, when he returned the rented car in damaged condition on June 19, did so surreptitiously and at a different location.

Additional facts from which an inference of repudiation could be drawn include the following: Lane disappeared without notice, explanation, or the furnishing of a forwarding address. He failed to report the accident of June 11; failed to forward the suit papers expressly left with him for that purpose, or to assist and cooperate in the defense of the action brought by the injured party. The trial court had the right to believe from the circumstantial evidence reviewed that Lane converted the car to his own use, thereby destroying his status as an insured, and leaving it to Best Rent-A-Car, Inc. and the insurance carrier to protect themselves as best they could. *See generally* R. Bowles, *Law of Conversion* §§ 79, 86, 91, 313 (1917); Restatement (Second) of Torts § 227 (1965); Prosser, *The Nature of Conversion,* 42 Cornell L.Q. 168, 180 (1957). Moreover, the court's conclusion of law No. 3 above quoted is in a sense also factual in nature. *See Estes v. Bevan,* 64 Wn.2d 869, 395 P.2d 44 (1964); *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Baltzelle v. Doces Sixth Ave., Inc.,* 5 Wn. App. 771, 490 P.2d 1331 (1971). We cannot say the conclusion drawn by the court from the stipulated facts found is beyond the court's power (*Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970)), or that the court's conclusion of repudiation is "upon a ground, or to an extent, clearly untenable or mani-

festly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

If, nevertheless, it be assumed arguendo the circumstantial evidence of conversion is insufficient, the trial court also rests its judgment dismissing the writ of garnishment on additional grounds, any one of which is adequate to sustain the judgment of dismissal. The additional grounds are insured Lane's failure to comply with insurance policy paragraphs Nos. 15, 16, 17 and 18 set out in the margin,[2] compliance with which is also expressly required by the car rental contract signed by Lane.

 The policy paragraphs requiring notice of accident, forwarding of suit papers, and assistance to and cooperation with the insurer are valid, reasonable conditions precedent inserted to help confine the risk assumed to that described for the premium paid. Compliance with paragraph No. 15

---

[2]"15. Notice of Accident. Coverages A and B. When an accident occurs the renter or driver shall give immediate notice to the named insured from whom the automobile was rented and immediately thereafter the named insured shall give written notice to the company or to an authorized agent. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"16. Notice of Claim or Suit. Coverages A and B. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

"17. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

"18. Action Against Company. Coverages A and B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

enables the insurer to promptly investigate the claim; compliance with paragraph No. 16 enables the insurer to take steps to protect itself in the litigation, including protection against the entry of default judgment; compliance with the cooperation requirement in paragraph No. 17 protects the insurer because cooperation means "that the assured must give the insurer full, fair, and frank disclosure of all information reasonably requested by the insurer to enable it to determine whether there is a genuine defense." *Hilliard v. United Pac. Cas. Ins. Co.,* 195 Wash. 478, 484, 81 P.2d 513 (1938).

■■ The validity of these conditions, including the cooperation clause, is not and cannot be challenged. *See Koontz v. General Cas. Co. of America,* 162 Wash. 77, 297 P. 1081 (1931); *Zitnik v. Burik,* 395 Ill. 182, 69 N.E.2d 888 (1946); *Indemnity Ins. Co. of North America v. Smith,* 197 Md. 160, 78 A.2d 461 (1951). The plaintiff has the burden of proving compliance with these conditions precedent. *Van Dyke v. White,* 55 Wn.2d 601, 349 P.2d 430 (1960). If the burden of proof is not discharged as to any of the conditions precedent, the insurer has a defense to liability. Case law is divided on the question whether, or the circumstances under which, prejudice to the insurer must be shown to permit a defense on the ground of noncompliance with an express condition precedent in an insurance policy, *e.g., compare Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 313 P.2d 347 (1957), with *Campbell v. Allstate Ins. Co.,* 60. Cal. 2d 303, 384 P.2d 155, 32 Cal. Rptr. 827 (1963), and *Shirley v. American Auto. Ins. Co.,* 163 Wash. 136, 300 P. 155 (1931). *See* Annot., 18 A.L.R.2d 443, 482-87 (1951); 16-18 A.L.R.2d LCS 390-94 (1973); 8 J. Appleman, *Insurance Law & Practice* §§ 4732, 4738 (1962); 14 G. Couch, *Insurance* § 51:101 (2d ed. R. Anderson 1965). *See also* note 3 *infra.* The requirement of prejudice is imposed notwithstanding it is omitted from the text of the conditions and "[t]here has been a failure to fulfill a condition upon which obligation is dependent." *Coleman v. New*

*Amsterdam Cas. Co.*, 247 N.Y. 271, 277, 160 N.E. 367, 369 (1928).

The conditions precedent in the policy expressly provide for performance by the insured. If, however, the injured party performs what the insured is required to but does not perform, the insurer is not or may not be prejudiced. We later consider this fact is discussing the sufficiency of performance of policy paragraphs No. 15 and 16.

■ It is useful at this point to consider the injured party's relationship to the insurance policy. The injured party claimant does not have a right of direct action on the liability policy to recover his damages on a covered accident. Paragraph No. 18 provides that "[n]othing contained in this policy shall give any person . . . any right to join the company as a codefendant in any action against the insured to determine the insured's liability." Paragraph No. 18 further provides, however, the injured party, after recovering judgment against the insured, may recover under the policy "to the extent of the insurance afforded by this policy." He may recover by the means of a writ of garnishment. In those garnishment proceedings, the injured party's rights are merely derivative—no greater than the insured's rights against the insurer on the insurance policy. Accordingly, any defense of insurer against the insured is also available against the injured party in answer to the injured party's writ of garnishment. *Philadelphia Fire & Marine Ins. Co. v. Grandview*, 42 Wn.2d 357, 255 P.2d 540 (1953); *Eakle v. Hayes*, 185 Wash. 520, 55 P.2d 1072 (1936); Annot., 18 A.L.R.2d 443, 501-03 (1951); 12 G. Couch, *Insurance* §§ 45:806, 45:859 (2d ed. R. Anderson 1964). As stated in 12 G. Couch, *Insurance, supra* at 733-34:

> Where the claimant has merely a derivative right of action, it is held that the liability of the insurer is not enlarged or extended in any way, with the result that the insurer may therefore raise any defense which would have been available against the insured. Otherwise stated, the injured person as a judgment creditor stands in the insured's shoes and is chargeable with any breach

of condition as well as failure of proof of facts on which liability depends.

. . . [A]ll conditions precedent in the policy must be satisfied when suit is brought by the claimant, and the insurer may show the insured's noncompliance with or violation of the policy.

(Footnotes omitted.) In the instant case, the insured Lane neither notified the insurer of the accident, forwarded suit papers, nor assisted or cooperated in any respect in defense of the plaintiff's action against him following the collision. He thereby failed to comply with the conditions precedent contained in paragraphs Nos. 15, 16 and 17. Unless, as plaintiff contends, the insurer is precluded from raising the defense of noncompliance, the dismissal of the writ of garnishment must be upheld.

Plaintiff contends insurer has waived its claimed defenses because its letter of August 12, 1965, to plaintiff's attorneys denied liability. We do not agree. No doubt an insurer's unconditional denial of liability to its insured on the insurance policy is either a waiver of the latter's duty to comply with policy conditions precedent dealing with notice of accident, forwarding of suit papers, and furnishing assistance and cooperation in the defense of the claim, or, if the denial is relied on by the insured to his prejudice, the insurer is estopped from raising as a defense to the insured's claim against it noncompliance with policy conditions precedent. What is said as to an unconditional denial of liability applies also to a conditional denial of liability as to defenses not reserved. *See Capece v. Allstate Ins. Co.,* 86 N.J. Super. 462, 207 A.2d 207 (1965); *Washington v. National Serv. Fire Ins. Co.,* 252 S.C. 635, 168 S.E.2d 90 (1969); *Womack v. Allstate Ins. Co.,* 156 Tex. 467, 296 S.W.2d 233 (1956); 8 J. Appleman, *Insurance Law & Practice* § 4747 (1942, Supp. 1973); 18 G. Couch, *Insurance* § 71:43 (2d ed. R. Anderson 1968); Annot., 18 A.L.R.2d 443, 491-94 (1951).

It has been pointed out that the "doctrine of waiver, as asserted against insurance companies to avoid

the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel." 7 D. Blashfield, *Automobile Law & Practice* § 303.6, at 425 (3d ed. 1966). This may be due to the fact that when "the term 'waiver' is so used . . . the elements of an estoppel almost invariably appear . . . " 56 Am. Jur. *Waiver* § 3, at 105 (1947). Nevertheless, the doctrines are not the same. *Buchanan v. Switzerland Gen. Ins. Co.*, 76 Wn.2d 100, 455 P.2d 344 (1969). Thus, estoppel in favor of the insured against the insurer, unlike waiver, requires a prejudicial change of position by the insured in justifiable reliance upon the words or conduct of the insurer. The insured cannot justifiably rely on the insurer's words or conduct of which he is unaware. *James v. Ward*, 6 Wn. App. 915, 496 P.2d 555 (1972); 28 Am. Jur. 2d *Estoppel and Waiver* § 76, at 712 (1966). *See* 7 D. Blashfield, *Automobile Law & Practice* §§ 303.5, 303.43 (3d ed. 1966); 18 G. Couch, *Insurance* § 71:17 (2d ed. R. Anderson 1968).

Plaintiff contends the difference between waiver and estoppel is such that waiver arises even if the insured does not have knowledge of the facts constituting the waiver—in this case, denial of liability. We do not agree. It is to the insured's interest at least to be kept informed concerning any changes in his duties under the insurance policy. Without knowledge of such changes, he cannot act advisedly or intelligently—a fact implicitly recognized in other waiver cases. Thus, with such knowledge the insured can determine whether to insist upon the waiver or to decline it. 6 G. Couch, *Insurance* § 32.283 (2d ed. R. Anderson 1961). With such knowledge, he can determine whether to consent to the insurer's withdrawing a waiver previously made. 56 Am. Jur. *Waiver* § 3, at 104 (1947). Denial of liability is treated as a waiver because good faith requires the insurer "should apprise the [insured] fully of its position; and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of plaintiff [insured]." *Smith v. German Ins. Co.*, 107 Mich. 270, 279, 65 N.W. 236, 239 (1895).

The illustrations given suggest that while waiver is a voluntary and unilateral relinquishment of a known right, it cannot be made operative upon an insured ignorant of the relinquishment. This result is implicit in the statement in *Ray v. Missouri, K. & T. Ry.*, 96 Kan. 8, 10, 149 P. 397, 398 (1915), "[t]here is no waiver unless so intended by one party and so accepted by the other." If notice to or knowledge by the insured is a prerequisite of waiver to the end that the insured may act advisedly and intelligently, then it follows that, whatever other notice may suffice, a notice to a stranger to the insurance policy, or a notice to an injured party whose rights are antagonistic to the insured, cannot fairly be treated as notice to or knowledge by the insured.

At best denial of liability to the injured party is merely a denial to one whose rights are derivative and no greater than those of the insured. To permit the injured party to claim the benefits of a denial of liability unknown to the insured and which the insured could not claim would mean that the rights of the injured party, instead of being merely derivative, would be superior to that of the insured. Cases holding a waiver made to an injured party, if uncommunicated to the insured, does not constitute a waiver of the insurer's defenses to a claim by the insured are supportable by the principles discussed. *See Courtney v. Stapp*, 232 Miss. 752, 100 So. 2d 606 (1958); *Hester v. Harleysville Mut. Ins. Co.*, 259 S.C. 45, 190 S.E.2d 487 (1972). Plaintiff relies on *Hartford Accident & Idem. Co. v. Randall*, 125 Ohio St. 581, 183 N.E. 433 (1932), and *Deaven v. Baumgardner*, 62 Pa. D. & C. 183 (Cumberland C.P. 1947), to support a contrary claim. *Deaven* follows and approves the rationale of *Randall*. The conclusion reached in these cases that the insured's knowledge of the insurer's denial of liability is immaterial ultimately rests on two basic arguments with which we cannot agree: (1) the injured party's performance of policy conditions precedent performable by the insured constitutes performance; and (2) the injured party's rights are independent, not merely derivative. The injured party no doubt is capable of giving notice of an

accident and of forwarding suit papers, thereby showing the insurer has not been prejudiced by insured's failure to do these things. The injured party, however, is incapable of performing the condition precedent requiring the insured's cooperation. Secondly, in Washington an injured party's rights are derivative, not independent. Any defense the insurer has on the policy against insured is available against the injured party. We agree with the trial court that the garnishee defendant's letter of August 12, 1965, to plaintiff's attorney did not constitute a waiver of the insured's rights so as to preclude insurer's defense.

We now consider whether the conditions precedent described in paragraphs Nos. 15, 16 and 17, although not performed by the insured, are nevertheless to be considered as having been performed. The trial court determined they had not been performed. We do not entirely agree with this rationale for reasons next stated, but we do agree that at least as to paragraph No. 17 containing the cooperation clause, performance has not occurred.

It is arguable that from inferences that can be drawn from the stipulated facts and the applicable case law, the insurer may not rely on insured Lane's failure to comply with paragraphs Nos. 15 and 16 as a defense. Best Rent-A-Car, Inc. may well have notified the insurer of its discovery about June 19 of the return of the rented car in damaged condition on its Bellevue lot in order to comply with its liability insurance policy. It is also arguable that when Best Rent-A-Car, Inc. forwarded to the insurer the injured party's attorney's letters of June 29 and July 27, 1965, giving notice of the accident, the notice so given inured to insured Lane's benefit. *Kidwell v. Chuck Olson Oldsmobile, Inc.*, 4 Wn. App. 471, 481 P.2d 908 (1971). It is further arguable the requirement of notice of accident by the insured is satisfied notwithstanding the injured party alone gives the notice. *Jameson v. Farmers Mut. Auto. Ins. Co.*, 181 Kan. 120, 309 P.2d 394 (1957); 8 J. Appleman, *Insurance Law & Practice* § 4738, at 50 (1942). *See* Annot., 18 A.L.R.2d 443, 458-59 (1951). If the insurer actually receives the notice and

is thereby enabled to investigate the accident, there is no prejudice and therefore no defense. *See Kidwell v. Chuck Olson Oldsmobile, Inc., supra.*[3]

Similarly, subject to what is later said, it is arguable insurer was not prejudiced by insured Lane's failure to comply with policy paragraph No. 16 requiring insured to forward suit papers to the insurer. It is inferable that upon being served on December 22, 1966, in plaintiff's suit naming the Lanes and the rental company as defendants, Best Rent-A-Car, Inc. forwarded the summons and complaint to the insurer. In reliance upon those suit papers, it is inferable the insurer retained its attorneys and caused their appearance to be entered for their insureds. At that point, the insurer was not prejudiced by Lane's failure to comply with paragraph No. 16 and, using the rationale of *Kidwell v. Chuck Olson Oldsmobile, Inc., supra,* the receipt by the insurer of suit papers inured to the benefit of insured Lane.

If the attorneys originally appearing for named defendants Lane had withdrawn from the case when Best Rent-A-Car, Inc. was dismissed May 15, 1967—a matter as to which the stipulation is silent—the failure of Lane to for-

---

[3]*Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 313 P.2d 347 (1957), involved the sufficiency of a long-delayed notice of accident given by the insured, and a long-delayed forwarding of suit papers by the insured, to comply with express conditions precedent. The insurer, however, received no notice from any other source before the insured notified the insurer of the accident after the injured party brought suit against the insured; and the insurer received no copy of the suit papers other than the untimely forwarded suit papers from the insured. The instant case, unlike *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co., supra,* involves the significance of lack of prejudice to the insurer when the injured party or the additional insured gives the insurer notice and forwards suit papers under circumstances that would have constituted compliance had the insured done so and the insurer acts thereon. The problem is not the same. Indeed, *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co., supra,* was cited in *Kidwell v. Chuck Olson Oldsmobile, Inc.,* 4 Wn. App. 471, 474, 481 P.2d 908 (1971). The *Sears* case concerning the notice of accident and forwarding of suit papers condition is necessarily distinguishable under the *Kidwell* rationale. *See* 8 J. Appleman, *Insurance Law & Practice* § 4738 (1962); Annot., 18 A.L.R.2d 443, 458-59 (1951); 16-18 A.L.R.2d LCS 359-61 (1973).

ward suit papers served upon him or the extra copy left with him for that purpose, and the failure of plaintiff to send a set of these papers to the insurer, constituted a breach of policy paragraph No. 16 to the insurer's prejudice, *i.e.,* entry of a default judgment without notice to the insurer.

■ Whatever doubts there may be concerning whether the insurer is precluded from relying on the defense of insured's failure to comply with paragraphs Nos. 15 and 16 do not arise as to paragraph No. 17—the cooperation clause. It is clear the insured was the only one who could comply with that paragraph. Plaintiff, whose interest was adverse to Lane and to the insurer, could not comply. Lane disappeared and left the jurisdiction without a forwarding address. The efforts to locate him made by the insurer, the rental company and the attorneys appearing for both the rental company and Lane, proved unavailing. Lane did not contact the insurer, the rental company, the repair shop, or the attorneys at any time after he took possession of the rented car on June 5, 1965. Clearly, by Lane's disappearance and lack of cooperation, the insurer was unable to obtain a fair and prompt disclosure of information it had a right to demand to enable it to determine whether and to what extent it had a genuine defense or defenses to the merits of plaintiff's suit. *See Hilliard v. United Pac. Cas. Ins. Co.,* 195 Wash. 478, 81 P.2d 513 (1938).

Lane has not cooperated and plaintiff has not afforded insurer an adequate opportunity to defend against his suit. *See Merriman v. Maryland Cas. Co.,* 147 Wash. 579, 266 P. 682, 63 A.L.R. 1040 (1928); 8 J. Appleman, *Insurance Law & Practice* § 4738 (1942). The insurer has been prejudiced. The disposition of this appeal, however, is the same whether we rely upon the rationale of *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co., supra,* or the rationale of *Campbell v. Allstate Ins. Co., supra.*

The defense of failure to comply with the cooperation clause available against the insured is available also against plaintiff, whose rights are no greater than that of the

insured. *Eakle v. Hayes,* 185 Wash. 520, 55 P.2d 1072 (1936); *Hartford Accident & Indem. Co. v. Partridge,* 183 Tenn. 310, 192 S.W.2d 701 (1946); Dodge, *An Injured Party's Rights Under An Automobile Liability Policy,* 38 Iowa L. Rev. 116, 128-30 (1952). *See generally* Annot., 60 A.L.R.2d 1146 (1958). The writ of garnishment was properly dismissed.

## CROSS-APPEAL

Defendant cross-appeals contending the court erroneously refused to award it reasonable attorney's fees pursuant to RCW 7.33.290. That statute provides:

> Where the answer is controverted the costs of the proceeding, including a reasonable compensation for attorney's fees, shall abide the issue of such contest . . .

Defendant argues that the right to attorney's fees is not discretionary with the court because the statute is mandatory. Defendant argues only the amount of attorney's fees is discretionary. It is true that RCW 7.33.290 uses the language "shall abide the issue of such contest . . . ," the language being mandatory in form.

Whether the word "shall" is to receive a mandatory or permissive interpretation is a matter of legislative intention. *Spokane County ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 97 P.2d 628 (1940). As pointed out in *Snyder v. Cox,* 1 Wn. App. 457, 462 P.2d 573 (1969), a garnishment case in which the court held the word "shall" used in a portion of RCW 7.32.160 is mandatory:

> If the right of anyone depends upon giving the word *shall* an imperative construction, the presumption is that *shall* is used in reference to that right or benefit, and it receives a mandatory interpretation.

*Snyder v. Cox, supra* at 462. *See also Jordan v. O'Brien,* 79 Wn.2d 406, 486 P.2d 290 (1971). The apparent purpose of the attorney's fee provision in the garnishment statute is to encourage garnishees, who are involuntarily involved in litigation in which they are commonly strangers, to answer truthfully. RCW 7.33.290, in the part above quoted, appears to call for general and uniform application. No exceptions

are made. There is no appropriate language suggesting the right to the fee is in the court's discretion. The legislative use of the word "shall" rather than "may" in the quoted phrase "shall abide the issue of such contest," is consistent with and strengthens the case for the interpretation of the statute suggested. The word "shall" in statutes providing an attorney's fee to a garnishee defendant has been given an imperative meaning. A court is required to permit recovery of an attorney's fee, its only discretion being as to amount. *Carter v. First Nat'l Bank*, 15 Ga. App. 55, 82 S.E. 628 (1914); *Dallas Packing Co. v. Kimberling*, 289 S.W. 149 (Tex. Civ. App. 1926). *See* 38 C.J.S. *Garnishment* § 264(b) (2), at 524 n.95 (1943).

The judgment on appellant's appeal is affirmed, and the judgment on the cross-appeal is reversed.

SWANSON, C.J., and CALLOW, A.C.J., concur.